**UNITED STATES of America,
Plaintiff,**

v.

**Roscoe COOK, Defendant.**

**No. LR–71–CR–114.**

United States District Court,
E. D. Arkansas, W. D.

Nov. 24, 1971.

**772**

Richard M. Pence, Jr., Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Robert D. Smith III, Purcell & Smith, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

EISELE, District Judge.

This is a criminal case in which the defendant Roscoe Cook was charged with possessing, uttering and publishing a stolen and forged Social Security check. The defendant, having waived a jury, was tried by the Court on October 28, 1971.

At the trial, two of the government's witnesses, Mr. K. Krikor and Mr. F. B. Hollis, made in-court identifications of the defendant. Mr. Krikor, the owner of the store where the stolen check was cashed, identified the defendant as the person who cashed the check. Mr. Hollis, a co-endorser on the check, identified the defendant as the person who requested his assistance in cashing the check. The defendant objected to the admissibility of these in-court identifications on the grounds that the pre-trial photographic identification procedure utilized by the government was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" tainting the in-court identification and requiring its exclusion. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1967). The Court reserved its ruling on the objection and indicated at the close of the trial that, should the Court rule that the in-court identifications were admissible, judgment of conviction would be entered. If, however, it concluded that it was necessary to exclude the identifications, the government would have failed to es-tablish beyond a reasonable doubt the guilt of the defendant, and judgment of acquittal would be entered.

The facts concerning the pre-trial photographic identifications are relatively uncontradicted. On or about May 3, 1971, a stolen Social Security check was cashed at Krikor's Grocery Store. An investigation was initiated and approximately one month later Mr. Krikor and Mr. Hollis, then a possible suspect, were interviewed; however, no photographs were shown them at that time. Approximately four and one-half months after the cashing of the check, Mr. Krikor and Mr. Hollis were again interviewed separately, and this time two pictures of the defendant were shown to each of them and they both identified the pictures as being photographs of the person who cashed the check. No other pictures were shown the witnesses.

Mr. Krikor testified that he made a habit of carefully observing people who cashed checks in his store and that, independent of the pre-trial photographic identification, the defendant stood out in his mind because he had long, noticeably dyed, black hair at the time he cashed his check and because he was the only white man to cash a Social Security check at his store in several years. Mr. Krikor made, without hesitation, a positive in-court identification and never hedged on his position even under lengthy cross-examination. It should be noted that Mr. Krikor asserted that he was able to make the identification even though the person who cashed the check had long hair, dyed black, while the pictures represented a person with relatively short gray hair, and the defendant, at the time of the trial, had long gray hair.

Mr. Hollis also made, without hesitation, a positive in-court identification. He testified that he could have made such an identification independent of the prior photographic identifications. It should also be noted that Mr. Hollis testified that he had worked with the defendant eight or nine years prior to the day that the check was cashed (i. e. in the early '60's); that they accidentally met on that

date; and that he drove the defendant to Krikor's grocery store at defendant's request and assisted him in getting the check cashed.

The government agent who conducted the photographic identifications testified that he did nothing to encourage the witnesses to identify the pictures of the defendant as being pictures of the man who passed the check.

Even though, as in *Simmons, supra,* the pre-trial photograph procedure may have "fallen short of the ideal", this Court does not agree with the defendant that it was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. There is nothing in the evidence to indicate that the agent conducting the photographic identification made any suggestion that the person portrayed by the photograph was a "prime" suspect or that he made any other suggestion concerning the defendant's possible or probable participation in the crime. The defendant argues that the showing of only his photographs was, in and of itself, impermissibly suggestive. This Court does not agree.

All procedures utilized in making photographic identifications are suggestive in some respects and in some degree. Even when several photographs of different persons are shown to a witness, it is possible that the witness will assume that one of the photographs in the group represents someone who is suspected of committing the crime. It could even be argued that there is a stronger

tendency for a witness, in such a situation, to believe that he should recognize one of a group of photographs and that such a procedure is more suggestive than simply showing a witness one photograph without other suggestive conduct on the part of the interviewing agent. Psychological arguments can be mustered either way. The Court cannot say that the procedure used here was either basically unfair or unreasonable.

It is obvious that the procedure utilized here did not create a substantial likelihood of irreparable misidentification. It is also apparent that there was an independent basis for making the in-court identifications.[1] Both witnesses made positive, unqualified identifications. Both witnesses adequately explained the bases for their identifying the defendant independent of the photographs shown them by the investigating officer. It would not be good precedent to rule that the identification testimony of eye-witnesses could be tainted or ruined should an officer merely exhibit to the witness a photograph of the person identified prior to the trial, when the acts or statements of the officer are not otherwise suggestive.

In accordance with this memorandum opinion, an order will be entered this date overruling defendant's objection to the admissibility of the in-court identifications.

On the basis of the facts heard at the trial, the Court finds that the defendant Roscoe Cook is guilty of the crimes charged in the two counts of the information.

1. It should be noted that shortly after discovering that the check had been dishonored, Mr. Krikor attempted to ascertain the identity of the person cashing the check by describing said person to the payee named on the check. His testimony concerning the description given at that time was consistent with the physical characteristics of the defendant. These facts and others support the argument that there was an independent basis for the in-court identification and this situation should be distinguished from a situation where the witness has been unable to describe the physical characteristics of the person committing the crime prior to the pre-trial identification process.