**UNITED STATES of America,**
**Appellee,**

v.

**Roscoe COOK, Appellant.**

**No. 71–1716.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1972.

Decided July 5, 1972.

Rehearing and Rehearing En Banc
July 31, 1972.

---

Robert D. Smith, III, Little Rock, Ark., for appellant.

W. H. Dillahunty, U. S. Atty., and Richard M. Pence, Jr., Little Rock, Ark., for appellee.

Before MURRAH* and VAN OOSTERHOUT, Senior Circuit Judges, and HEANEY, Circuit Judge.

PER CURIAM.

The defendant was convicted, 334 F. Supp. 771, on one count of possessing a stolen United States Treasury check in violation of 18 U.S.C. § 1708 and on one count of uttering that check with a forged endorsement in violation of 18 U.S.C. § 495. His principal contention on appeal is that the pretrial identification procedure used by a postal inspector was so impermissibly suggestive that it tainted the in-court identification of the defendant by the only two eyewitnesses to the crime and, thus, deprived him of due process of law.

On about May 3, 1971, Krikor, the owner of a grocery store cashed a Social Security check for a person unknown to him. The stranger was accompanied by Hollis, a regular customer, who agreed to sign the check and cover any risk. The stranger was in the store for fifteen to twenty minutes, but it is not clear exactly how long Krikor actually observed him.

Approximately one month after this transaction, Krikor learned that the check was a forgery. He and Hollis, who was a suspect, were interviewed by a postal inspector. There are no details of Krikor's interview but, at the trial, he stated this recollection of the stranger:

"I said [at about the same time as the interview by the postal inspector] that he was a gentleman between forty to fifty, give or take a few years, and he had black hair, medium length, and looked like he had—well, he dyed his hair. It didn't look like natural black

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

hair. And that's all I * * * could remember because actually he looks pretty much like any other person."

Krikor emphasized that the stranger was the first white person to cash a check in his store in three years. According to the federal agent, Hollis described the stranger in his initial interview as " * * * slim, and his face was thing [sic]. He also described him as his hair being probably dyed, and it was dark."

Approximately four and one-half months after the transaction, both Hollis and Krikor were again separately interviewed by the same postal inspector. They were each shown two photographs of the defendant in the style of mug shots. Both immediately identified him as the stranger.

While the photograph of the defendant did show an ordinary looking middle-aged white male, it also showed that the defendant had quite short grey hair. Thus, the only detail of the stranger's appearance, which had impressed the witnesses at the time of the transaction and at the time of their initial interviews, was strikingly different from the appearance of the defendant in the photograph.

The trial occurred approximately two weeks after the photographic identifications. Both Krikor and Hollis made positive in-court identifications of the defendant as the individual who had cashed the check.

In reviewing this case, we must apply the principles of Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), in which the Supreme Court stated:

" * * * [E]ach case must be considered on its own facts, and * * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. * * * "

In this case, the trial judge concluded that the procedure used, in which the witnesses were shown only pictures of the defendant, was not "basically unfair or unreasonable," and that it did not create a substantial likelihood of irreparable misidentification. He also concluded that the witnesses had independent bases for making the in-court identifications. United States v. Cook, 334 F. Supp. 771 (E.D.Ark.1971).

We disagree with the court's conclusion that the identification procedure was neither unfair nor unreasonable. In *Simmons*, the Supreme Court stated:

" * * * Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw * * *."

*Id.* at 383, 88 S.Ct. at 971.

It has also been suggested that the display of pictures of the defendant alone is the most suggestive and, therefore, the most objectionable method of pretrial identification. Kimbrough v. Cox, 444 F.2d 8, 10 (4th Cir. 1971). Thus, we think that the procedure adopted in this case did contain inherent dangers of misidentification.

In addition, numerous other circumstances served to increase the likelihood of such misidentification. For instance, the photographic identification was held four and one-half months after the transaction and only two weeks before the trial. The passage of so much time would, by itself, increase the danger of prejudice. See, Kimbrough v. Cox, *supra* at 10. Here, where the photograph-

ic identification was not only long after the transaction but also shortly before the trial, there was even a greater "chance that the photographs would be more vivid in the witnesses' minds than their recollection of the [criminal] during the commission of the crime." United States v. Marson, 408 F.2d 644, 651 (4th Cir. 1968), cert. denied, 393 U.S. 1056, 89 S.Ct. 695, 21 L.Ed.2d 698 (1969). Such a possibility is also more likely here, where the defendant's appearance at trial was more in accord with his appearance in the photographs than with the stated initial descriptions of the witnesses. We also note that there was no showing of need on the part of the government for this lapse in proper police procedures. The postal inspector, who conducted the interviews, made it clear that he could easily have used additional photographs of individuals generally resembling the defendant.

■ Nevertheless, we must affirm because the trial court correctly held that there were independent bases for the in-court identification by the two witnesses. Hollis had spent a substantial amount of time with the defendant before driving him to the grocery store and assisting him in having the check cashed. In addition, several years before the transaction, Hollis had worked with the defendant. The court found that Krikor made a habit of carefully observing people who cashed checks in his store. He rarely cashed checks for individuals he did not know. The defendant, in particular, stood out in Krikor's mind because of his noticeably dyed hair and because he was the only white man to cash a check in the store in several years. The trial court also found that Krikor's initial description was generally in accord with the appearance of the defendant at trial. Furthermore, despite differences in hair color and length, both witnesses made positive and unqualified in-court identifications. They did not waiver in these identifications, even though they were subjected to searching and lengthy cross-examination.

In view of all these facts, we believe that the government has clearly and convincingly demonstrated that the in-court identifications by Krikor and Hollis were not based on the photographic identifications. United States v. Ranciglio, 429 F.2d 228, 230 (8th Cir.), cert. denied, 400 U.S. 959, 91 S.Ct. 358, 27 L. Ed.2d 268 (1970).

■ We also hold that the defendant's contention that there is not sufficient evidence to support the verdict is clearly without merit.

Affirmed.