The People of the State of Illinois, Plaintiff-Appellee, *v.* Paul Tuttle, alias, Paul Thompson (Impleaded), Defendant-Appellant.

(No. 55583;

First District—January 4, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and William K. Hedrick, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant was indicted for the offense of armed robbery. After a bench trial he was found guilty of the lesser offense of plain robbery. He appeals and submits two contentions in seeking a reversal of his conviction.

*OPINION*

■■ Defendant's initial contention is without merit. He argues that, since he was indicted for the offense of armed robbery, a finding of guilty of plain robbery is a fatal variance. This argument was directly refuted in *People v. Washington* (1971), Ill.App.2d (No. 54292).

"An indictment for a particular offense operates as an indictment on all included offenses even though the included offenses are not specifically set forth in the indictment. *People v. Ostrand*, 35 Ill.2d 520, 221 N.E.2d 499. Consequently, when an offense charged in an indictment embraces an included offense a defendant may be convicted of the lesser offense under the indictment even though the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt of the higher offense. *People v. Lewis*, 375 Ill. 330, 31 N.E.2d 795. Here the defendant was indicted on a charge of armed robbery, At the close of the State's case the trial judge found that the evidence was insufficient to sustain a verdict of guilty to the offense of armed robbery. The trial judge submitted the cause to the jury with instructions and verdict forms on the offense of robbery. Under the indictment it was proper to submit to the jury any and all offenses which were included within the offense of armed robbery."

Defendant's second contention is that the trial court erred in denying his motion to suppress identification testimony. A favorable ruling on his motion would have precluded the following testimony which was successfully elicited at his trial: 1) Testimony concerning the complainant's identification of defendant's photograph on May 12, 1969; 2) Testimony concerning the complainant's in-person identification of defendant at the latter's hearing on an unrelated charge on May 12, 1969; 3) The complainant's in-court identification of defendant. It is argued that each of these identifications was induced or tainted by suggestive and improper police procedures and that to allow testimony regarding each of them was to violate his Fourteenth Amendment right to Due Process of Law.[1] This argument requires a review of the evidence pertaining to the three identifications.

---

[1] Defendant has not argued the absence of counsel during the pre-trial identifications as an alleged constitutional violation; accordingly we will not discuss the issues which would have been raised had such a contention been made.

On May 6, 1969, between 3:00 A.M. and 4:00 A.M. Reverend William T. McIntosh was accosted and robbed on the North Side of Chicago. Reverend McIntosh testified at trial that on that date he was walking north on the east side of Hazel Street when he observed a young black man and a young white man turn the corner and head south on the opposite side of the street. At that time the two men were approximately forty feet from him. Immediately after turning the corner, they dashed diagonally across the street directly towards him. The white man struck him with a board, and both assailants robbed him, the entire incident lasting approximately one or two minutes. Reverend McIntosh observed the faces and physiques of both assailants as they ran towards him and as he struggled with them, his vision aided by a nearby unobstructed street light which made the area "very well illuminated." The blow which he received did not make him dizzy, and he at all times "had complete control of all [his] faculties." After the robbers fled, Reverend McIntosh secured emergency medical treatment at Weiss Memorial Hospital. There he was interviewed by police officers Dahlberg and Hettinger. He gave each the following descriptions of his assailants: both were approximately 17 years old, 5'7" and 130 pounds and had black hair; the black man wore a dark jacket and the white man wore a light-colored shirt.[2] Reverend McIntosh said nothing about facial hair, color of eyes, scars or hair length, but told the officers that he would be able to identify both of his assailants.

On May 11, 1969, five days later, Officer Hettinger arrested defendant for an unrelated charge. He called Reverend McIntosh on May 12th and requested a meeting outside Court Branch 42 at 11th and State Street. When Reverend McIntosh arrived, he was told that Hettinger had in custody two men who were believed to be good suspects in the May 6th robbery. He was asked to view 12 photographs and to indicate whether his assailants were among them. There were six photographs of black men and six of white men, all from the same general age group. The pictures of defendant, a white man, and Henry Collins, a black man, were somewhere in the middle and were both picked out by Reverend McIntosh on his first viewing. He saw only the front of the photographs and was not told the names of the men identified. Officer Hettinger then asked him to enter the courtroom, sit near the front and try to identify his assailants from those who would be present in the courtroom. Officer Hettinger sat in the row immediately in front of him. Two or three cases were called with no response by either Reverend McIntosh or Officer

---

[2] Defendant testified at trial that he was 5'7" and 135 pounds and was 21 years old at the time of the offense.

Hettinger, but when the case of Paul Tuttle was called, Hettinger approached the bench. Defendant, another white man and Henry Collins were led into the courtroom by bailiffs. When their hearing was concluded, Officer Hettinger left the courtroom, and Reverend McIntosh followed. He promptly identified Tuttle and Collins as his assailants. Although he testified that he had no difficulty in making the identifications, he admitted to interpreting Officer Hettinger's actions as an indication that the suspects were among the three defendants at the bench with Hettinger. No other suggestive comments or conduct were attributed to Officer Hettinger or to any other policeman. No formal line-up was ever conducted.

Defendant's contention regarding the inadmissibility of his in-court identification will be considered first, for resolution of the issues thereby raised will to some extent dispose of his contention that testimony concerning the other identifications should also have been suppressed. The legal principles governing the admissibility of in-court identifications are well established

■■■ In order to suppress an in-court identification on the ground of improper pre-trial identification procedures, a defendant bears the burden of proving two facts. First, he must establish that the pre-trial identification procedures were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States*, 390 U.S. 377, 384; *People v. Holiday*, 47 Ill.2d 300, 307-308.) Second, to the extent that suggestive procedures are established, they must be shown to have been "unnecessary" under the totality of the circumstances. (*Stovall v. Denno*, 388 U.S. 293, 302; *People v. Lee*, 44 Ill.2d 161, 169.) However, even if a defendant successfully establishes the above two elements, an in-court identification may nonetheless be admissible if the State shows "by clear and convincing evidence, that such in-court identification had an independent origin, arising from other uninfluenced observation of the defendant." *People v. McMath*, 104 Ill.App.2d 302, 313; affirmed, 45 Ill.2d 33; see also *People v. Fox*, 48 Ill.2d 239, 245.

■■ We hold that the photographic identification and the in-person identification in Court Branch 42 on May 12th were not procedures so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Although photographic identifications are often viewed with disfavor by the courts, their use is not *per se* unconstitutional, but becomes objectionable only if they are conducted in a sufficiently suggestive manner. (*Simmons v. United States, supra; People v. Holiday, supra.*) While we do not necessarily approve of the State's choice of the

photographic identification over a line-up in the case at bar, we find no suggestiveness or unfairness in the actual administration of the chosen procedure. However, we are less satisfied with the propriety of the in-person identification in Court Branch 42. The presentation of defendant in custody and accompanied by a co-suspect and only one other individual, coupled with Officer Hettinger's reactions to defendants' presence served to focus the attention of Reverend McIntosh on defendant. Though perhaps unintentional, there were elements of suggestion in this procedure, and it was clearly "unnecessary" at this stage of the investigation. However, given complainant's opportunity to observe defendant during the robbery, his accurate description of defendant, his immediate identification of defendant's photograph before entering the courtroom, the expressed ease of the in-person identification and the minor degree of the suggestiveness involved, we believe that this procedure did not give rise to a very substantial likelihood of irreparable misidentification. *People v. Eubank,* 46 Ill.2d 383.

■■ While the above conclusions adequately dispose of defendant's contention, we also note that the record contains clear and convincing evidence that Reverend McIntosh's in-court identification was based on a source independent of the pre-trial identifications. The U.S. Supreme Court, in *United States v. Wade,* 388 U.S. 218, 241, suggested a number of factors which should be considered by a court in determining whether an independent basis exists for an in-court identification.

"* * * Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. * * *"

Reverend McIntosh observed defendant's face and physique at close proximity for one or two minutes. His view was enhanced by substantial artificial illumination. The description furnished investigating officers matched that of defendant. Reverend McIntosh easily identified defendant's photograph during a fairly-conducted photographic identification which took place only five days after the robbery. This is adequate evidence of an independent source for the courtroom identification.

We conclude that the trial court's failure to suppress the in-court identification did not violate defendant's Fourteenth Amendment right to Due Process of Law. Because of our view that the pre-trial identifica-

tion procedures were not unduly suggestive, we further conclude that the trial court's failure to suppress testimony concerning those identifications also did not violate defendant's Fourteenth Amendment right. *People v. Eubank, supra.*

We affirm the judgment.

Judgment affirmed.

LEIGHTON and SCHWARTZ, JJ., concur.