JAMES MICHAEL NEAM, JR. *v.* STATE OF MARYLAND

[No. 278, September Term, 1971.]

*Decided January 28, 1972.*

The cause was argued before ANDERSON, THOMPSON and MOYLAN, JJ.

*Frank M. Kratovil,* with whom was *Daniel D. McFarland* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with

whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Jayson L. Amster, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Recognizing at once its utility and its hazards, the law permits evidence of prior crimes to be used to impeach the credibility of even a defendant-witness but austerely limits such prior crimes to actual convictions and, indeed, to convictions consonant with the Sixth Amendment's right to counsel.[1] The case at bar reveals the hazards at their most virulent.

It was just before midnight on New Year's Day, 1970, when Wayne and Virginia Williams, with their three-month-old daughter, were returning to their apartment-home in Hyattsville. Within seconds after their car had stopped on the parking lot adjacent to the apartment house, Mr. and Mrs. Williams were confronted by a gunman who, threatening them with their lives, demanded and received Mr. Williams's wallet and watch and Mrs. Williams's purse. A Prince George's County jury, presided over by Judge Robert B. Mathias, convicted the appellant, James Michael Neam, Jr., of the armed robbery. Upon that conviction, he was sentenced to 15 years imprisonment and ordered to the Patuxent Institution for evaluation as to possible defective delinquency. The appellant attacks his conviction on a broad front, alleging prejudicial error:

(1) in that his arrest was illegal and any evidence flowing therefrom inadmissible;

(2) in that certain incriminating evidence seized from his apartment was seized pursuant to a search beyond the scope of that permitted as an incident of a lawful arrest;

---

1. See *Johnson v. State,* 9 Md. App. 166, applying *Burgett v. Texas,* 389 U. S. 109.

(3) in that he was unfairly prejudiced by being cross-examined as to narcotics addiction for the ostensible purpose of impeaching his credibility as a witness in his own behalf;

(4) in that hearsay evidence was used by the State to establish probable cause for the issuance of his arrest warrant;

(5) in that an impermissibly suggestive extra-judicial photographic viewing tainted the later in-court identification made of him by Mr. Williams; and

(6) in that the evidence was legally insufficient for the trial judge to have submitted the case to the jury.

In view of our feeling that the appellant must prevail in his third contention, it will be unnecessary to enter into any extended discussion of the other five contentions. Because of the strong possibility that they may arise again, should the State choose to retry the appellant, it may be helpful to the court below upon retrial if we do treat them briefly, however.

In challenging the legality of his arrest, the appellant takes offense at the manner of its execution. He seeks to avail himself of the requirement that the police give proper notice of their purpose and authority before using force to break and enter any premises to effectuate an arrest, as that requirement was stated in *Henson v. State,* 236 Md. 518, and restated in *Berigan v. State,* 2 Md. App. 666, 669-670, lest the arrest itself be deemed illegal because of the excesses committed in its execution. The *Henson-Berigan* doctrine is simply inapposite to the facts at bar. The arresting officers here were proceeding pursuant to a judicially-issued arrest warrant. They went to the appellant's apartment at approximately 4:15 a.m. on January 3, 1970. They knocked loudly upon the door and announced their presence. At first, there was no answer. There ultimately was an extended conversation between the appellant and the arresting officers through the locked door. They indicated that they had a warrant for his arrest. He indicated that he did not believe that

they were police officers and demanded that a badge be slid under the door. The police did not comply with that demand. Although several of the officers were in plain clothes, they were accompanied by several other uniformed officers. At least one well-marked police cruiser, with spotlights, was parked immediately outside. The appellant armed himself and retreated to a bathroom. The police ultimately entered by virtue of a passkey obtained from the apartment manager. The appellant testified that the police kicked in the door. Even after the police were on the inside of the apartment, discussion continued with the armed appellant in the bathroom. He was ultimately persuaded to throw down his gun and to surrender himself to the police. There was nothing in the manner of effecting this arrest that offends *Henson* or *Berigan*. The gun, a photograph of which was offered in evidence, taken from at the feet of the appellant at the time of his arrest, was properly seized by the police as an indisputably necessary incident of that arrest.

Upon his second contention, the appellant seeks to avail himself of *Chimel v. California,* 395 U. S. 752. The attempt is unavailing. The evidence shows, to be sure, that the appellant was arrested in his living room. It shows that, after the arrest but before the officers left with the appellant for the police station, certain incriminating items, identification cards of the robbery victim, were seized by the police from the top drawer of a chest of drawers located in the appellant's bedroom. The appellant urges that a search of a closed bureau drawer in a bedroom is, under *Chimel,* beyond the permissible scope of a search incidental to a lawful arrest which takes place in a living room. His legal proposition is, as a legal proposition, unassailable. It has, however, no factual predicate in the present evidence. At an intra-trial suppression hearing, Officer Taylor testified, and the trial judge upon that uncontradicted testimony found, that no search occurred. Officer Taylor stated that just before leaving for the police station, the appellant, in handcuffs, requested, "Would you get my wallet for me?" The officer replied,

"Where is it?" The appellant responded, "In the dresser drawer." The officer repeated, "Do you want me to get it for you?" The appellant replied, "Yes." The officer testified that as he reached into the top dresser drawer to get the wallet, he accidentally knocked over a handkerchief. He then observed the identification cards of Mr. Williams. The appellant did not testify at the suppression hearing.

Upon the facts as found by the trial judge, supported by the testimony of Officer Taylor, this inadvertent and unexpected chancing upon incriminating evidence at a time when the officer was legitimately upon the premises for another purpose would qualify as a "plain view" exception to the warrant requirement for the seizure of evidence. *Coolidge v. New Hampshire,* 29 L.Ed.2d 564, 581-587. Upon the facts, as they were found to be, *Chimel* is simply inapplicable.

The appellant's fourth contention is that he was prejudiced by the introduction of hearsay evidence from two out-of-court declarants, an unnamed police informant and one Charles Whitcup. It is clear, however, that such hearsay was offered only in the course of the intra-trial suppression hearing and solely on the question of whether the issuing magistrate had probable cause to issue an arrest warrant. It is settled that hearsay information is admissible within that context. *Jones v. United States,* 362 U. S. 257; *Dawson v. State,* 11 Md. App. 694.

Nor may the appellant prevail in his fifth contention that the in-court identification made of him by Mr. Williams was the tainted product of an earlier impermissibly suggestive photographic viewing. The trial judge found, and the evidence supported the finding, that nothing occurred in the course of either of two sessions where Mr. Williams viewed photographs to give rise to any "likelihood of any irreparable identification" in contravention of *Simmons v. United States,* 390 U. S. 377. The trial judge found further, and again the supporting evidence was present to substantiate the finding, that the in-court identification made by Mr. Williams was inde-

pendent of any pretrial viewing of the appellant or of his photograph and was the product, rather, of his independent recollection from the night of the robbery. *United States v. Wade,* 388 U. S. 218, 240-242; *Smith and Samuels v. State,* 6 Md. App. 59, 68-69.

The appellant's final contention is that the evidence against him was legally insufficient to permit the trial judge to submit the case to the jury. Simply to recite the in-court identification made by Mr. Williams of the appellant as his assailant and to recite the recovery of Mr. Williams's identification cards in the appellant's bureau drawer some 28 hours after the robbery is to demonstrate the insubstantiality of the appellant's contention in this regard.

It is rather upon the rocks of the appellant's third contention that the prosecution founders. The appellant took the stand in his own defense. His direct examination consisted largely of asserting an alibi to the effect that, while the robbery was going on, he was busily engaged elsewhere in tracking down an errant and erring wife and, in the course thereof, dodging some half a dozen assassination attempts. He was turned over to the assistant state's attorney for cross-examination. After an extended colloquy, probing for the details of this midnight search for the missing wife, the assistant state's attorney asked:

> "I see. Okay. Now, will you tell the jury whether or not and how long you had been dealing in dope?"

The appellant's objection to the question was sustained and the assistant state's attorney was directed to proceed along other lines. After extended cross-examination into the alleged assassination attempts, into the roster of persons who were permitted access to the appellant's apartment and into the non-presence, as defense witnesses, of any of the appellant's friends and co-tenants, the assistant state's attorney asked the following:

> "Q. How about your wife?
> A. I have seen her.

Q. Is she in court today?
A. No, sir.
Q. Mr. Neam, do you use heroin?

Again the objection was sustained. The assistant state's attorney requested a bench conference, which was granted. At the bench conference, the assistant state's attorney urged two theories of admissibility. He claimed firstly that the line of questioning bore directly on the appellant's credibility. He also urged that the narcotics addiction would be relevant to show an unusual need for money and therefore a special motivation for crimes of theft. The trial court permitted him to proceed but indicated that the testimony would be received for the limited purpose of impeaching the appellant's credibility. As the cross-examination proceeded, it was developed that the appellant had a weekly income of between $150 and $175. It was developed that his heroin addiction amounted to a "$50-a-day habit." Just before jury instructions, the State again urged that the testimony was relevant to show motivation for a crime of theft. The court refused to accept the State's theory and instructed the jury that the testimony could be considered by them solely for the effect it would have upon the appellant's credibility:

> "The Court tells you as to the cross-examination by Mr. Amster of the defendant regarding his use of narcotics, that is to be considered only for the purpose of his credibility with other of his testimony. It is not indicated or to be taken by you as in any wise to influence or presume that he is capable of the commission or has a propensity to commit this crime, but it only goes to his credibility as to the rest of his testimony."

It is unnecessary for us to decide whether evidence of narcotics addiction is admissible to establish a special financial need and a special motivation for various theft offenses or not. In the case before us, the trial judge admitted the testimony as bearing upon the appellant's

credibility. The law is clear that it is not admissible for such a purpose.

What is now Article 35, Section 10, "Competency to prove interest of witness or conviction of infamous crime," has been upon the statute books since the passage of Chapter 109 of the Acts of the Legislature of 1864. It provides, in pertinent part:

> "In all cases it shall be competent for any of the parties to the proceedings [in this case, the State] to prove by legal evidence [including the cross-examination of the witness] . . . the conviction of such witness of any infamous crime . . ."

The unbroken line of cases, too numerous for complete citation, holds that this impeachment device is strictly limited to "convictions" and that it is impermissible to reveal that a witness has been merely accused of or arrested for a crime. See, for example, *Niemoth v. State,* 160 Md. 544, 557; *Kremen v. Rubin,* 139 Md. 682; *Hurley v. State,* 6 Md. App. 348, 355; *McLaughlin v. State,* 3 Md. App. 515, 524. Indeed, Chapter 259 of the Acts of 1969 tightened the limitation further by adding to Article 35, Section 10:

> "No conviction may be used for any purpose under this section when the conviction is being appealed or the time for noting an appeal has not expired."

See *Bailey v. State,* 263 Md. 424. See also *Cleveland v. State,* 12 Md. App. 712. *A fortiori,* specific acts of prior misconduct falling short even of arrest or accusation may not be used to impeach the witness. *A fortiori,* the risk of prejudice is further magnified when the witness, thus to be impeached, is the defendant on trial.

The State argues, notwithstanding statute and precedent, the testimony such as that adduced upon this cross-examination is, upon the question of credibility, highly

relevant. Of course, it is relevant; and that, according to Dean Wigmore, is precisely why it is so damning.

In 1 Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* (3rd Ed., 1940), the great master of evidence points out that the state may not, by showing specific acts of prior misconduct, demonstrate the bad character of an accused either to attack his veracity or to show his general predisposition to crime. He points out that such evidence is excluded not because it fails to meet the test of relevancy, but because of the auxiliary policy of shielding an accused from undue prejudice, which would far outweigh the limited utility of the evidence on the issue of testimonial veracity. At Section 194, p. 646, he says:

> "It may almost be said that it is because of this indubitable Relevancy of such evidence that it is excluded. It is objectionable, not because it has no appreciable probative value, but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge."

After citing extensive Anglo-American case law to support the proposition, Dean Wigmore goes on, at p. 650:

> "The reasons thus marshalled in various forms are reducible to three: (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences; both of these represent the

principle of Undue Prejudice. . .; (3) The injustice of attacking one necessarily unprepared to demonstrate that the attacking evidence is fabricated; this represents the principle of Unfair Surprise."

As to the universality of the rule excluding such testimony, Dean Wigmore concludes, at 651:

"The rule of exclusion thus expounded is so firmly established that it would be held to prevail even in jurisdictions where no express enunciation of it has been made."

We hold that the trial court committed error when it instructed the jury that they could consider the fact of the appellant's narcotics addiction on the issue of his credibility as a witness.

*Judgment reversed; case remanded for a new trial.*