**STATE of Maine**

v.

**Lloyd Wayne NORTHUP.**

Supreme Judicial Court of Maine.

April 2, 1973.

Foahd J. Saliem, County Atty., Augusta, for plaintiff.

Wathen & Wathen by Daniel E. Wathen, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Once again we are asked by this appeal to review the troublesome and often recurring problem resulting from a line-up identification to determine whether or not the constitutional requirements elucidated by Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), have been offended.

See: State v. Boyd, Me., 294 A.2d 459 (1972); State v. LeBlanc, Me., 290 A.2d 193 (1972).

Two reputable and highly respected young ladies who were employed as counselors at a girls camp were carnally assaulted and made the victims of revolting acts of sexual deviation. As the assaulter was driving away in an automobile the girls were able to observe the registration number of the automobile and jot it down.

A police officer, upon being made aware of the incident, quickly determined that the motor vehicle registration was issued to the wife of a man who had many times been convicted of the crime of rape. See Northup v. State, Me., 272 A.2d 747 (1971). The appellant Northup was taken into custody within a matter of hours after the assault and brought to the police station.

That the girls had been raped was not open to question. The circumstantial evidence, i. e., that the assailant had used a motor vehicle registered to Mrs. Northup, coupled with the fact that Northup had a well-deserved *reputation* as a rapist, would cause a reasonable man to conclude Northup was the man guilty of having committed these two rapes.

Centuries ago political philosophers in English-speaking countries determined that society as a whole is best served by requiring the government to comport to certain canons of decency and fairness which we in Maine have labeled *"governmental fair play"* (State v. Munsey, 152 Me. 198, 127 A.2d 79 (1956)), even toward those charged with having committed heinous offenses under circumstances revolting to decent people everywhere.

History, we submit, has proved the political philosophers were not wrong.[1]

---

1. We point to Hitler's Germany as an example of what happens when the people permit a government to trammel man's natural rights in order to obviate such things as crime in the streets.

It is for this reason we, as a review court, scrutinize with great care State action in a criminal proceeding to assure that the State's conduct has been fair in every case in which a defendant, by an appropriate manner, claims lack of fairness. This is especially true in cases in which the accused is a person on whom suspicion is likely to fall because of a record of convictions for similar offenses.

Often persons who are not aware of the reasons for the rule protest that the courts have seized upon a *"technicality"* to free a *"guilty man"* when the courts set aside a conviction because the police or prosecutor's conduct has failed to comport to the standards imposed by decisions of the courts of last resort.

This reasoning overlooks entirely the obvious fact that although the evidence presented may establish guilt beyond a reasonable doubt, if such evidence was not gathered by the use of fair methods, it can be and often is that the *"guilty man"* isn't a guilty man at all. This is especially true in the case of unnecessarily suggestive pretrial line-up identifications.

The Supreme Court of the United States in Stovall v. Denno, supra, recognized that all confrontations for identification have inherent dangers. A line-up for identification purposes which was unnecessarily suggestive, experience shows, often has led to irreparable mistaken identification.

Northup was indicted in the Superior Court of Kennebec County and charged by two indictments with having committed rape and by two indictments with having committed sodomy. The four indictments were consolidated for trial. A jury trial was had and a verdict of guilty of all four charges was returned. He appealed these four convictions, as he has a right to do.

His claim on appeal is that his rights under the Fifth and Sixth Amendments of the United States Constitution were violated by the admission of in-court identifications by his alleged victims, which identifications, he says, were tainted by pre-arrest line-up identifications.

We deny his appeals.

When the police went to his house to investigate the complaint which had been made to them, a so-called Miranda warning was given before he was taken into custody. It is not in dispute but that within a very short time after he was taken into custody and brought to the police station (but not charged with any offense), appellant Northup was told he was to be placed in a lineup for identification. He was not told he had a right to counsel, to be present at such lineup. Since he had not been charged with a crime, he had no constitutional right to have counsel present at the lineup. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

Five persons in addition to the defendant were asked to participate in the lineup. None of the other participants were known to the rape victims. Three of the participants were police officers. Three participants in the lineup wore T-shirts, the fourth wore a corduroy sweater, the fifth wore an army fatigue jacket and appellant was dressed in a distinctive blue plaid shirt.

While the officers wore uniform trousers, they were so arranged behind a desk in the room the trousers could not be seen. The rape victims were brought into a room where they could view the participants in a lineup through a one-way mirror. The victims could not be seen by the participants but the participants could be seen by the victims.

The victims immediately identified the defendant as the person who had committed the rapes and the acts of sodomy.

At the trial the State chose not to offer evidence concerning the pre-arrest identification preliminary to the in-court identification. The defendant, however, made objection to the in-court identification on the ground that it had been tainted by the

**4**

out-of-court identification above described. The presiding Justice thereupon very properly held a hearing outside the presence of the jury to determine the circumstances of the pre-arrest identification.

All the evidence received in the hearing before the Court is in the record. The presiding Justice after considering the evidence presented, ruled:

(1) That the failure to offer defendant opportunity to have counsel present at the line-up constituted a violation of the defendant's Sixth Amendment rights.

(2) That the line-up was not suggestive.

He made no finding as to whether or not there was an independent source of the in-court identification.

We do not agree with either conclusion the trial Justice reached.

■ As we have earlier indicated, at the time the line-up was held Northup was not charged with any crime. *Kirby*, supra, makes it clear the right to counsel guaranteed by the Sixth Amendment of the Constitution of the United States does not apply to a police-arranged investigatory confrontation between the victim and the suspect held before any formal charges have been brought. Thus, the presiding Justice's conclusion of law was contrary to the express holding in *Kirby*.[2]

The record reveals that when the victims of the rape talked with the investigating officer immediately after the incident was reported to the police, among the items mentioned in the description they gave of the assailant's clothing was a blue plaid shirt with black and white in it.

When the officer went to Northup's house and took him into custody, Northup was dressed in trousers and a white T-shirt. When the officer asked him to come out to the cruiser, Northup went back into his room and came out wearing a predominantly blue plaid shirt with black and white in it. When the line-up was held the appellant was the only one of the six persons in the line-up who was garbed in a blue shirt with black and white colors in it.

There is absolutely nothing in the record which would permit the inference that any police officer encouraged or caused the defendant to be so dressed at the time of the line-up. It is clear that the defendant chose his clothing without any suggestion whatever from any officer. It cannot be said that an officer had arranged for Northup to be wearing this distinctive shirt, suggestive of the description given by the victims at the time they were first interviewed.

Nevertheless it is equally clear the shirt was distinctive and was very suggestive that the person wearing it was the person described by the victims when they were interviewed by the officer.

In State v. Boyd, Me., 294 A.2d 459 at 464, we said in footnote 1:

"While the police cannot be expected to dress all members of a lineup identically, a deliberate arrangement whereby only a Defendant was required to wear a distinctive and significant article of clothing when viewed by the victim might well destroy the validity of the procedure.

"Here we are unable to determine from the sparse record whether the officer knew before the lineup that the assailant had worn white sneakers or whether he learned this from the victim immediately after the lineup—an issue better determined by a Court which has the witnesses before it."

■ We now rule that if a line-up is in fact unduly suggestive because the defend-

---

2. The decision in *Kirby* is dated June 7, 1972. The presiding Justice made his rulings November 23, 1970. He could hardly be expected to have anticipated *Kirby*.

ant is wearing a distinctive and significant article of clothing, it matters not whether the arrangement was deliberate on the part of the police or resulted from inadvertence on the part of the police in neglecting to arrange for the removal by the defendant of such distinctive and suggestive article of clothing. The officer in charge of the line-up was the same officer who had received the description of the assailants from the girls, including the fact he wore a distinctive shirt.

■ We recognize that line-ups are often a necessary part of a thorough police investigation. We must and do place responsibility for making certain such line-up is not unnecessarily suggestive on the officers conducting such identification line-up, whether it be held before or after arrest.

In addition to the fact the defendant was garbed in a distinctive shirt making the line-up unnecessarily suggestive, the police employed a one-way mirror.

The Circuit Court of Appeals for the 1st Circuit in Allen v. Moore, 453 F.2d 970 (1st Cir. 1972), said:

". . . A one-way glass viewing in a police station of which the suspect is ignorant is such a flagrant constitutional violation that no prosecutor should be surprised if, faced with such a viewing occurring after the date of this opinion, we conclude that the fact that it was thought necessary was a conclusive admission that the witness required unconstitutional assistance."

In *Boyd*, supra, this Court said:

"We recognized in *Levesque* [State v. Levesque, Me., 281 A.2d 570] that while the use of prearrest photographic identification of not-yet-apprehended suspects carries some inherent potential danger and its fairness and reliability depend upon the circumstances under which the identification takes place, it is a necessary tool of crime detection. A similar potential for unfairness and unreliability

exists in the use of the one-way mirror. However, the same urgency for an identification out ·of the suspect's presence does not exist when the suspect is already at the police station available for a face-to-face identification. Because of this, we consider that only exceptional circumstances of exigency or practical necessity would justify the use of the one-way mirror in the future."

In State v. LeBlanc, Me., 290 A.2d 193 (1972) at 200, we intimated, but did not decide, a suggestive lineup which in practical effect singles out the accused as *the* police suspect is prima facie violation of constitutional due process. The burden becomes upon the State to demonstrate the existence of circumstances which mitigate the effects of the suggestiveness or which justify or excuse its presence on the basis of exigency or practical necessity.

■ We now decide that whenever a one-way mirror is used in a lineup so that the accused is unable to know what occurs on the other side of the mirror or the accused is presented in such a way that he is, in practical effect, presented singly and in a context marking him conspicuously as *the* suspect, there is prima facie violation of constitutional due process. The burden in such case is on the State to affirmatively show additional circumstances either mitigating the suggestiveness initially indicated, or provide a justification or excuse for the practice in accordance with the standard that particularly compelling or exigent circumstances make the practice reasonably necessary.

■ In the instant case there is nothing in the record even rcmotely suggesting any exigency or practical necessity for permitting this appellant to be viewed in suggestively distinctive garb setting him off markedly from the other participants in the lineup or for the use of a one-way mirror.

The presiding Justice did not have the benefit of the suggestion we later made in

*Boyd* [3] that he rule whether or not the in-court identification had an independent source. Consequently no such ruling was made.

It would serve no useful purpose to remand the case to the trial court for a determination of the issue because we are able to make such determination on the basis of the very complete record now before us.

The victims of this rape were intelligent young ladies. They first were in contact with their assailant in the evening of the night the criminal assaults took place. The place of the first encounter was in front of a dairy bar located on Western Avenue in Augusta. The area was extremely well lighted and the victims had a face-to-face discussion with the assailant. Both victims entered the front seat of the car and were driven a considerable distance. Both were at all times seated in the same front seat as the assailant and continuous conversation took place. Ultimately the assailant drove into a wooded area near a construction site over the victims' protestations. The events encompassing the assaults oc-curred over a substantial period of time. While the victims were necessarily in near hysterical condition, there was considerable conversation held between the assailant and the victims after the rapes. The victims were sufficiently alert to carefully watch the assailant as he drove away and to note his automobile registration number and jot it down. Under the circumstances a conclusion that there was not an independent basis for the in-court identification would be irrational.

And this is so beyond a reasonable doubt.

Thus, despite the existence of a due process violation in the conduct of the pre-arrest lineup confrontation the presiding Justice was correct in permitting the in-court identification to be made.

Since the presiding Justice was correct in his ruling, though for the wrong reason, there was no error.

The entry must be,

Appeal denied.

3. The *Boyd* decision is dated September 7, 1972.