STATE of Maine

v.

Everett C. CARLSON.

Supreme Judicial Court of Maine.

July 30, 1973.

Chadbourn H. Smith, Malcolm L. Lyons, Asst. Attys. Gen., Augusta, for plaintiff.

Hewes & Culley by Peter W. Culley, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

The defendant was tried by a Justice of the Superior Court, jury waived, and found guilty of rape.

On the basis of evidence adduced at trial the Justice below could have properly found the following facts. On the evening of June 12, 1971 at about 10:00 P. M. the complainant, a student at the University of Maine, was walking along Main Street in Yarmouth toward her home a few blocks away. She observed a white pick-up truck which passed her several times. The truck finally came to a stop. The door on the driver's side of the vehicle opened and a man emerged. Moments later she saw somebody coming out of the shadows near the parked vehicle ahead of her and approaching her on the sidewalk. As she was about to pass him, the man struck her forcefully on the chin with a closed fist and the complainant staggered back, momentarily dazed. The man then grabbed her by the throat and "half dragged, half carried" her into the bushes to a point some ten feet from the sidewalk. Her assailant prevented her from screaming by saying, "If you do, you're dead." The complainant could smell the odor of beer on his breath. In spite of her pleading with him not to do it, the man forced her to lie on the ground, took off her shorts and had sexual intercourse with her. The complainant offered no physical resistance. The incident ended, the assailant ordered her to go into the bushes and not to turn around and come back. He then entered his truck and drove away. When she was sure he had gone, she returned to the street and thence to her home. She immediately informed her mother of the events which had transpired. The police were called and given a description of the assailant. The complainant was then taken to Portland and examined by a physician. At approximately 11:00 P.M. the defendant was arrested while operating a white pick-up truck about fifteen miles from Yarmouth. The violation charged was operation of a motor vehicle while impaired.

The defendant was taken to the Brunswick jail where it was discovered that his physical appearance, clothing and vehicle seemed to match the description given earlier by the complainant. The complainant was brought to the jail and upon observation of the defendant asleep in his cell immediately identified him as her assailant.

The defendant was indicted for rape on September 7, 1971 and eight days later was arraigned and admitted to bail. On October 5, 1971 and July 7, 1972 certain pretrial motions were filed by defendant. On July 17, 1972 hearing was had and all pending motions, including a motion to dismiss the indictment for want of a speedy trial, were disposed of by the Court below. On July 25, 1972, the Court having declined to accept a plea of guilty because of defendant's alleged inability to recall any of the events connected with the alleged rape, the case was fully heard upon a not guilty plea.

We conclude that the several points raised for our consideration by appeal are without merit and the appeal must be denied.

■ In the course of her direct examination, the complainant made it apparent that she submitted to the commands of the defendant because of the sudden and unexpected application of violent force and the threat to her life if she made outcry. On redirect examination the following questions and answers were given:

"Q. [By County Attorney]: Just a minute. [Defense counsel] has asked you a question, 'And you made no attempt to scream or holler audibly.' And from further testimony, you did what he told you. Why did you do these things? And, why didn't you scream?

A. Well, I went—
[Defense counsel]: I object, it is leading.

The Court: He's asking why. She may explain with reference to the

question of screaming, why she did or didn't.

A. Well, I had no idea what he had in mind, and I was going to do as much as I could to keep my own safety.

Q. So, you did it out of fear?

A. Yes, yes.—

[Defense counsel]: I object to the previous question as clearly leading, 'So, you did it out of fear?' 'Yes.' I object to that question, your Honor.

[County Attorney]: Is the question stricken, and the answer?

The Court: No, it may stand."

Appellant contends that the failure to strike the leading question and the response was prejudicial error. In Audibert v. Michaud (1920) 119 Me. 295, 296, 111 A. 305 our Court provided some guidelines with respect to rulings on questions asked on direct examination which can be answered "yes" or "no." "The presiding justice, who has an unprejudiced view of the entire situation, is allowed a wide discretion in this respect. * * * The legitimate object of all examination of witnesses is the eliciting of the truth, and the danger which arises from so-called leading questions is not that the truth may thereby be extracted in an untechnical manner, but that the untrue may be stated by a witness who is either indifferent to his oath or overzealous in the cause and eager to adopt any suggestion made by the attorney although not in accordance with the fact. It is not the mere leading but the leading into temptation, that is to be deprecated and avoided." So here the question and answer neither added to nor subtracted from the substance of prior unequivocal testimony given by the witness, albeit in terms other than "fear." The question was indeed but a fair summation of what had already been fully revealed. There was no abuse of discretion in letting the question and answer stand.

The second point of appeal briefed by the appellant is that the evidence, viewed in the light most favorable to the State, is insufficient to prove the crime of rape as a matter of law. The appellant places reliance on the failure of the complainant to scream or exert physical force to repel the advances of the attacker. In State v. Dipietrantonio (1956) 152 Me. 41, 46, 51, 122 A.2d 414, 417, 420, we held that "the elements of the crime of rape that must be proved by the State are, therefore (1) carnal knowledge of a female (2) by force and (3) against her will." We further stated, "Resistance is not necessarily an element. It depends on circumstances. The Maine statute does not say that it is an element. Resistance, if any, and the amount and kind of resistance, is evidence to show consent or lack of consent, and like all evidence is to be carefully considered by the [factfinder]." Finally, we approved an instruction to the jury in which the presiding Justice said, "It is for you to decide, and it is further for you to give such weight as to whether or not that fear prevented her from offering any greater resistance than she did offer, as you may find it." In the instant case the evidence permits no other rational conclusion than that the defendant overcame the will of the complainant by violent force and threat of death and compelled her to have sexual intercourse with him. These acts are punishable as rape.

As his third point on appeal, appellant seeks to raise an issue with respect to complainant's in-court identification of the defendant at trial. On direct examination the complainant was permitted *without objection* to identify the defendant as her assailant. Recognizing that M.R.Crim.P., Rule 51, requiring timely objection to evidence and a statement of the grounds therefor, has the "force of law" and applies equally to "constitutional rights," we held under similar circumstances in State v. Levesque (1971–Me.) 281 A.2d 570, 577 that the identification issue must be deemed waived unless "the evidence com-

plained of admitted without objection is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial." As we said in Levesque, "The instant case presents no such problem." In so deciding, we are greatly aided by the fact that the Justice below made oral findings of fact as preliminary to his judgment that defendant was guilty. Touching upon the issue of identification, raised in argument as bearing upon proof of guilt beyond a reasonable doubt, the Justice specifically found:

"Now, as far as identification is concerned, the Court is convinced beyond any doubt that what she gave was a clear, precise description of the individual who attacked her. Now, in a totally unrelated incident,[1] the defendant was located by a state trooper some 14 miles away from the scene of the alleged offense here within a time period consistent with the happening of the offense, and the description that was given, and which the officer was faced with, clearly described the individual who was then in custody in the white truck, and that is this defendant.

I am satisfied that she could make a clear and independent identification of the defendant at some other time other than in the cell block,[2] and that she did just that, and she did that today, independent of any views of the defendant at the time she was at the Brunswick Police Station."

The record abundantly suppports this finding by the Justice below and thus the finding of an independent source of the in-court identification. The mere fact that trial did not occur until about thirteen months after the rape was committed was completely outweighed by the detail and accuracy of the complainant's pre-confrontation description. The complainant testified that she was with the defendant for approximately fifteen minutes during the commission of the crime. Although at that hour of the evening night had fallen, some illumination was furnished by a street light in the area. She engaged her attacker in conversation in an evident effort to persuade him to desist. Her attention was directed specifically to her attacker's facial features when he asked her if she liked his moustache. After the rape she was engaged in face to face conversation with him for some moments before her release. On her first interview with the police she was able to give an unusually complete description of her assailant's features and clothing. She told them that he was driving a white pickup truck and had the odor of beer on his breath. She described his height with reference to her own, his hair, his moustache and a scar near his eye. She informed them that his outer clothing consisted of a brown corduroy jacket with two plastic buttons on the left sleeve, a T-shirt, dark coarse pants, heavy working boots or shoes and an old leather belt. The Justice below could properly consider the marked similarity as between the description given by the complainant to the police and the appearance of the defendant when he was arrested on the highway as described by the arresting officer. He also had the benefit of his own observation of the defendant during trial. The complainant at the time of this unfortunate incident

1. The defendant was arrested by the state trooper on a charge of driving while impaired. It was not until they arrived at the Brunswick police station that the state trooper first learned that a complaint of rape had been lodged and the complainant had furnished the police with a complete and accurate description of the defendant and his vehicle.

2. Later, on the evening of the assault, and after the complainant had been taken to

a Portland hospital and examined by a physician, she returned to Brunswick police station and was shown the defendant who was lying in a detention cell in a drunken stupor. She instantly identified him as her assailant. The defendant was not arrested or charged with rape until after this identification had been made. As already noted he was then in custody on an unrelated charge.

had just completed her sophomore year in college. The factfinder could properly conclude that her conduct throughout demonstrated that, after being initially dazed by the blow inflicted upon her by the defendant, she remained alert and observant. Finally, he could conclude that the shame and outrage of one who had had no prior sexual experience were such as to indelibly imprint the features of her assailant upon her memory.

In the instant case we have present two factors which were noted as conspicuously lacking in State v. Boyd (1972–Me.) 294 A.2d 459. As noted above we have findings of the Court below analyzing the "totality of the circumstances" and bearing upon the "independence of the in-court identification." We have, moreover, a record which contains a "description of the assailant given by the victim before the Defendant's arrest which can be compared with the Defendant's appearance." In this and other respects *Boyd* is readily distinguishable. We view the evidence in this case as even more strongly supportive of the in-court identification than were the facts in State v. Northup (1973–Me.) 303 A.2d 1, 6,—and in *Northup* we said, "Under the circumstances a conclusion that there was not an independent basis for the in-court identification would be irrational." Appellant takes nothing by this claim of error.

Finally, appellant asserts violation of a Sixth Amendment right. On July 7, 1972 he filed a motion to dismiss the indictment. This motion, grounded on the claim that he had been deprived of his right to a speedy trial, was heard by the Court below on July 17, 1972 and denied.

■ The Supreme Court in the recent case of Barker v. Wingo (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, for the first time established criteria by which an asserted deprivation of the right to speedy trial is to be judged. The Court identified four factors to be considered as courts "engage in a difficult and sensitive balancing process" in reaching decision on speedy

trial issues. These four factors are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Prejudice is to be considered in light of the three fundamental interests which the Court identified as being protected by the Sixth Amendment right: the prevention of oppressive pretrial incarceration, minimization of anxiety and concern on the part of the accused, and limitation of the possibility that the defense will be impaired. None of the above factors is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." The very nature of a balancing test "necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis."

■ It is important to note that mere lapse of time will not *per se* establish the constitutional violation. The Court said, "We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. * * * We find no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months." In *Barker* the Court unanimously declined to find a constitutional violation even though the time lapse between indictment and trial was approximately five years. In the balancing process other factors were deemed to outweigh the length of delay, especially the acquiescence of a defendant who clearly "did not want to be tried."

■ In the instant case approximately thirteen months elapsed between arrest on June 12, 1971 and trial on July 25, 1972. We cannot determine from the record the reason for this delay. The defendant was free on bail and represented by counsel during this time. A motion for expert psychiatric assistance was filed on October 4, 1971 by this counsel but no effort was made to enter a plea of not guilty by rea-

son of mental disease or defect which would have precipitated an evaluation of defendant's mental condition at the State's expense. The colloquy between defense counsel and the Court below at the hearing on the motion conveys the suggestion that there may have been a difference of opinion as between counsel and his client as to the latter's mental condition which may have contributed to the delay. In any event it is not shown that defendant made any request for trial until July 7, 1972 when the motion to dismiss was filed. Trial was had within eighteen days thereafter. Of the factors for consideration under *Barker*, the appellant shows a mere lapse of time and nothing more. The appellant's apparent acquiescence in delay and the absence of any prejudice to him either in the preparation of his defense or in the course of trial make it abundantly clear that no violation of his right to speedy trial has been demonstrated.

The entry will be

Appeal denied.

POMEROY, J. did not sit.

All Justices concurring.