**STATE of Maine**

v.

**Forrest A. ROWE.**

Supreme Judicial Court of Maine.

Jan. 25, 1974.

---

2. We were not told what prompted the stipulation. Mr. Gagnon himself testified his damage was only $150.00!

Peter G. Ballou, Asst. Atty. Gen., Philip Merrill, Law Student, Portland, for plaintiff.

Basil A. Latty, Robert N. Walker, Yarmouth, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

In a trial in the Superior Court (Cumberland County), defendant was found

guilty by jury verdict of the offense of uttering a forged instrument in violation of 17 M.R.S.A. § 1501. The defendant was sentenced to imprisonment in the Maine State Prison for a period of not less than one and one-half years and not more than three years. Defendant has appealed from the judgment of conviction. We deny the appeal.

The State's evidence was presented by four witnesses: Carl Rawstrom, the individual whose name was forged; Nancy Caufield, assistant manager of the Westgate branch of the Portland Savings Bank; George St. Pierre, a Freeport barber; and John Whitmore, a Portland police officer.

Mr. Rawstrom testified that he maintained savings accounts at the Portland Savings Bank, that he made no withdrawal on August 31, 1972, and that the signature on the withdrawal slip in question was not his own. He further testified that a passbook on one of his savings accounts was missing from the place he had last left it, his automobile glove compartment, on August 31, 1972.

Miss Caufield testified that on August 31, 1972, a man approached her in the bank, presented a passbook belonging to Carl Rawstrom, and told her he wanted to withdraw one thousand dollars ($1,000) from his account. Miss Caufield made out the withdrawal slip, and the man signed it with the name Carl E. Rawstrom. Upon checking the signature with a specimen, Miss Caufield became concerned with the comparison. She then requested the assistance of the branch manager who, after inspecting the customer's social security card, approved the withdrawal. Because of her concern over the identification, Miss Caufield activated a remote camera which photographed the customer during the transaction. She estimated that the entire transaction lasted ten to fifteen minutes.

Because of the concern surrounding the withdrawal, the main office of the bank was notified of what transpired. Upon contacting Mr. Rawstrom, it was learned that the withdrawal was by means of forgery. Later the same day, the Portland police came to the bank and removed the camera. These photographs were developed, and one was shown to Miss Caufield, who confirmed that it was one she took by means of the remote camera. She also made an identification of the forger from "mug shot" photographs shown to her by the police.

The bank photograph was also shown to Officer John Whitmore of the Portland Police Department, who recognized the photographed individual as a former fellow employee at Cumberland and York Distributors. That person was the defendant in this case.

Based on the photographic identifications, the defendant was taken to police headquarters for questioning on September 1, 1972. That same day, Nancy Caufield made a station house identification of the defendant as the man who had made the fraudulent withdrawal.

It is the circumstances surrounding Miss Caufield's station house identification that give rise to the defendant's appeal. The defendant was in a small room. Also present in the room was Police Detective Giobbi, who Miss Caufield knew was a police officer. She viewed the defendant through a one-way mirror. The defendant was not aware of the fact that he was being observed and had no lawyer present with him. Miss Caufield was also able to hear the defendant speaking to the police officer. The testimony suggests that a positive identification was made at this time.

In her trial testimony, the witness noted that at the time of the station house viewing the defendant had a crew cut as compared to his long hair of the previous day, and also that he was minus his mustache. George St. Pierre, a Freeport barber, testified that he gave the defendant a haircut on the afternoon of August 31, 1972. When the defendant entered the barber shop, he had "fairly long, little bushy, un-

ruly" hair and a mustache. Mr. St. Pierre gave him a crew cut.

■ Evidence of the photographic identifications was introduced in direct examination without objection as was Miss Caufield's in-court identification of the defendant as the man who signed the withdrawal slip. ". . . Recognizing that M.R.Crim.P., Rule 51, requiring timely objection to evidence and a statement of the grounds therefor, has the 'force of law' and applies equally to 'constitutional rights,' we held under similar circumstances in State v. Levesque (1971–Me.) 281 A.2d 570, 577 that the identification issue must be deemed waived unless 'the evidence complained of admitted without objection is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial.' As we said in *Levesque,* 'The instant case presents no such problem.' " State v. Carlson, Me., 308 A.2d 294 (1973). Evidence of the out-of-court confrontation and identification at police headquarters was elicited under cross-examination.

It is the contention of the defendant in this appeal that the pretrial station house identification violated his right to counsel under the Sixth Amendment to the United States Constitution, his right to due process of law under the Fourteenth Amendment, and so tainted the in-court identification as to make it inadmissible as evidence.

The witness, Nancy Caufield, had five opportunities for either corporeal or photographic confrontation with the person she repeatedly identified as the forger. The first confrontation was during the commission of the crime itself. She observed the forger in bright light and at very close proximity. Furthermore, her suspicion as to the customer's identity made her observations particularly careful. She was sufficiently concerned so as to contact the branch manager, activate a remote camera, and inform the main bank office of the withdrawal. There can be no doubt that she had an opportunity to form a highly reliable and permanent impression of the forger's physical features.

■ The second confrontation was with the photograph developed from the remote camera she had activated. There can be no doubt that this photograph was of the same person who had, in fact, made the withdrawal. Her viewing the photograph after its development was not an identification of any known person, but rather a confirmation that the photograph was the one she had taken the previous day.

The third confrontation was when Miss Caufield was shown a series of police mug shots. These photographs were shown the day after the crime was committed, and the police displayed several photographs of which only one was of the defendant. This Court has acknowledged that photographic identifications may occasionally lead to a misidentification of an accused. Notwithstanding the hazards involved, however, we have also recognized the great value of this police technique in criminal law enforcement. State v. Levesque, supra. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968), the Supreme Court refused to prohibit the employment of investigative photographic identification. The Supreme Court held

> "that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■ The photographic identification procedure in the instant case was proper and necessary. Several photographs were shown to the witness, all being of the "mug shot" type, with none of a greater size or of a more suggestive nature than

the others. The showing was just one day after the crime was committed, while the image of the forger was fresh in the witness' mind, and while the criminal was still unapprehended. The display constituted an honest effort by the police to identify the forger so as to effect an efficient investigation of the crime. Nothing in this procedure was so highly suggestive in character as to subject the witness to the likelihood of making irreparable misidentification.

The fourth confrontation was the station house identification through the use of the one-way mirror. The defendant claims that this "show up" violated both his Sixth Amendment right to counsel and his Fourteenth Amendment due process rights.

■ The Sixth Amendment claim does not require lengthy discussion. Defendant argues that he was entitled to have a lawyer present at the pretrial identification on September 1, 1972. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) established that an accused is entitled to counsel at any critical stage of the prosecution, and that a post indictment lineup is such a critical stage. In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972), the United States Supreme Court refused to extend further the *Wade-Gilbert* provisions for presence of counsel at identification, holding that the Sixth Amendment right to counsel did not apply to a police-arranged investigatory confrontation before any formal charges had been brought.

> "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the Government has committed itself to prosecute, and only then that the adverse positions of Government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."

The Court specifically refused to impose a per se exclusionary rule upon testimony concerning an identification without counsel for the suspect present which took place long before the commencement of any prosecution whatever.

Although under Article 1, § 6 of the Constitution of Maine, the defendant has a right to counsel independent of guarantees of the Sixth · Amendment to the United States Constitution, this Court has declined to extend that right beyond the limitations prescribed in *Kirby*. State v. Boyd, Me., 294 A.2d 459 (1972); State v. Northup, Me., 303 A.2d 1 (1973).

While refusing to extend Sixth Amendment protections to pre-indictment situations, the *Kirby* decision does recognize that the Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. This due process standard applies to *any* pretrial confrontation.

■ The standard for judging whether a given identification procedure has denied an individual of his due process rights was first articulated by the Supreme Court in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). That standard is whether

> "The confrontation conducted in (the) case was so unnecessarily suggestive and conducive to irreparable mistaken identification that (the defendant) was denied due process of law . . . . (A) claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ."

Applying this formulation to the *Stovall* facts, the Court found no due process violation, as the hospital confrontation between the victim and the defendant in that situation was necessitated by the fact that no one knew how much longer the victim would live, and she was the only person who could have exonerated Stovall.

The *Stovall* opinion gave little assistance to lower courts as to the application of this new due process standard for out-of-court identifications. Since the 1972 *Kirby* decision made *Wade* and *Gilbert* inapplicable to pre-indictment identifications, it is the *Stovall* due process standard of review that is to be employed in the vast majority of identification cases.

Two later Supreme Court decisions on identification following *Stovall* did little to clarify the use of the due process standard by trial courts. The *Simmons* case, supra, upheld an in-court identification despite the prior use of photographic identifications. The Court found that the procedure was justified by necessity and that factors external to the photographic identification made it unlikely that the suggestiveness led to a misidentification. In Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L. Ed.2d 402 (1969), the Supreme Court reversed the conviction of the defendant because the police lineup procedure in that case so undermined the reliability of the only eyewitness identification of the accused as to violate due process. The Court concluded that the suggestive elements in the pretrial identification procedure made it all but inevitable that the witness would identify the accused whether or not he was, in fact, the man. The Court in that case did not discuss the possible presence of external factors which might have supported an in-court identification.

■ The *Stovall-Simmons-Foster* line of cases established that (1) one man showups are inherently suggestive in nature and that fact weighs heavily against their validity but (2) that a suggestive identification procedure may not violate due process if it can be justified by necessity.

■ This Court has in the past joined in the condemnation of showups in general and has specifically singled out the use of one-way mirrors as being prima facie violative of due process. A witness' identification made at an unnecessary and unmitigatedly suggestive procedure is per se excluded from evidence.

"We now decide that whenever a one-way mirror is used in a lineup so that the accused is unable to know what occurs on the other side of the mirror or the accused is presented in such a way that he is, in practical effect, presented singly and in a context marking him conspicuously as *the* suspect, there is prima facie violation of constitutional due process. The burden in such a case is on the State to affirmatively show additional circumstances either mitigating the suggestiveness initially indicated, or provide a justification or excuse for the practice in accordance with the standard that particularly compelling or exigent circumstances make the practice reasonably necessary." State v. Northup, supra; *see* also; State v. Boyd, supra; State v. LeBlanc, Me., 290 A.2d 193 (1972); and Allen v. Moore, 453 F.2d 970 (1st Cir. 1972).

■ Applying this due process test to the present fact pattern, the use of the one-way mirror for a one-man showing was a prima facie violation of due process. There were no additional circumstances mitigating the suggestive nature of the one-way mirror showup itself. The showing was of a suggestive nature aside from whatever impact it had on the witness. Furthermore, no exigent circumstances necessitated the procedure.

■ The suspect was safely in custody, and a fairer lineup procedure could have been easily arranged. Therefore, the prima facie due process violation hardened into an actual due process violation under

the established Maine law. Evidence of such out-of-court identification was inadmissible by the State, although it was introduced under cross-examination by defense counsel.[1]

The State did not attempt to admit evidence of the identification made through the one-way mirror. Quite without interruption on direct examination, the State's key witness identified the defendant in court as the forger.

Maine cases have admitted in-court identifications which have a source independent of the taint of the unlawful out-of-court confrontation.

" 'Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards

only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification.' " State v. Boyd, supra, quoting Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (en banc 1968).

In the present case, the trial judge held a voir dire hearing as to the admissibility of the in-court identification. His finding was not specifically that the in-court identification had a source independent of the out-of-court confrontation. Instead, he found that factors external to the one-way mirror viewing *mitigated the effects of the suggestiveness* of the showup.[2] (Underscoring added.) Under the *LeBlanc-Boyd* doctrine, the issue of mitigating circumstances goes to whether the out-of-court confrontation constituted a due process violation of itself. If circumstances surrounding the confrontation mitigate the suggestiveness initially indicated, there would be no due process violation. In that case, the out-of-court identification itself is admissible as well as the in-court identification. That result is very different from the finding of an independent source for

1. In the recent case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court of the United States dealt with a *pre-Stovall, out-of-court* confrontation involving features of "impermissible suggestiveness." (Police did not exhaust all possibilities in seeking persons physically comparable to respondent.) As to such a *pre-Stovall out-of-court* confrontation, the Court in *Biggers* declined to invoke a "strict" rule requiring *per se* exclusion of such *out-of-court* identification. The Court held that evidence as to the out-of-court confrontation and identification was admissible, notwithstanding that the confrontation procedure unnecessarily injected suggestiveness, if in the "totality of the circumstances" there was no "substantial likelihood of misidentification."

The Supreme Court of the United States has not spoken with respect to the approach of Neil v. Biggers in a case such as is now before us, in which the out-of-court confrontation and identification as well as the trial occurred *after* the decision in Stovall v. Denno.

This Court does not feel compelled nor is it necessary to make a determination within the *Biggers* standard. The due process issue in the instant case, as it relates to the admissibility of the evidence of the out-of-court confrontation and identification, is here decided within the contours of the law of Maine as currently in force.

2. The trial judge stated on pages 41 and 42 of the transcript:
"In this case here there has been testimony given by Miss Caufield that she made an identification by a photograph taken of the defendant while he was in the bank at the time of the alleged uttering, and at that time there was a camera in the bank which she activated in which his picture was taken. The Court will rule in this case that the— that this identification mitigated the effects of the suggestiveness of the identification at the police station. And, your motions are denied."

an in-court identification. In this latter situation, the in-court identification is allowed as long as it is untainted by the prior constitutionally improper and inadmissible viewing.

The trial judge's ruling as to the admissibility of the in-court identification left unclear whether he was intending to find that Miss Caufield's identification of the defendant in court was independent of the prior station house viewing and, therefore, admissible despite the prior due process violation; or that the circumstances surrounding the identification were such as to mitigate the suggestiveness, thereby resulting in no due process violation at all. This Court will consider both possibilities as they apply to this case.

 The procedure employed by the police was, of itself, suggestive. State v. Northup, supra. No circumstances immediately surrounding the procedure lessened the suggestiveness of the one-way mirror showup. In fact, that procedure approximated a pointing out by the police to the witness of who they believed was the guilty man. The suggestiveness of the procedure was not mitigated by any surrounding circumstances, even though other factors completely external to the showup may have mitigated the influence of the improper procedure on the witness. The police conduct amounted to a violation of the defendant's right to due process of law according to the standard set in *Boyd*. It is unlikely that the trial judge was attempting to find otherwise.

 It is more likely that the trial judge was attempting to declare the in-court identification to be independent and untainted by the prior improper viewing. It is in that judgment that prior case law has allowed the presiding judge to look to external factors relating to the witness' ability to identify a suspect. Factors which this Court will consider as relevant in the search for an independent source include:

1) opportunity to view the criminal at the time of the commission of the crime;

2) freshness of the identification;

3) accuracy of the original description of the criminal;

4) adequacy of the lighting;

5) proximity of the criminal;

6) failure to identify other suspects;

7) promptness of the identification;

8) positiveness with which the identification is made;

9) existence of prior photographic identification.

 There is ample evidence present in the record of this case for this Court to conclude that the identification made by the witness in court was untainted by the prior viewing and had an independent source. We may so conclude, even though there was no clear finding of independent source by the trial judge. The preferable procedure is for the trial judge to determine whether the in-court identification has a source independent of the out-of-court confrontation. State v. Boyd, supra; State v. Carlson, supra. This Court has decided, however, that a remand to the trial court for a determinaion is not necessary where the Law Court is able to make such a determination on the basis of a very complete record before it. State v. Northup, supra.

 The length of time during which the witness observed the criminal at the commission of the crime, her close proximity to him, the bright lighting conditions in the bank, the witness' heightened observation due to her suspicions, her prior photographic identification and her confidence as to identification convince this Court that there could be no doubt as to the independent basis for the in-court identification.

Even though there may well have been suggestive elements in the out-of-court identification, the witness may testify as to identification supported by an independent basis without specific determination by the trial or appellate court of whether the prior unpresented identification violated the defendant's due process rights. United States v. Wilkerson, 456 F.2d 57 (6th Cir. 1972); United States v. Cook, 334 F.Supp. 771 (E.D.Ark.1971); People v. Tuttle, 3 Ill.App.3d 326, 278 N.E.2d 458 (1972); Neam v. State, 14 Md. App. 180, 286 A.2d 540 (1972). As there was no attempt by the State to introduce the out-of-court identification, there was no possible error in the trial judge permitting the in-court identification.

We conclude, therefore, that Nancy Caufield's in-court identification was based on a variety of sources independent of the prior suggestive station house viewing and, as such, was admissible as evidence and violated no due process rights of the defendant.

The entry shall be,

Appeal denied.

POMEROY, J., did not sit.

All Justices concurring.