(No. 39091.—

THE PEOPLE *ex rel.* PETER W. SUDDETH, Appellant, *vs.* BERT REDNOUR, Superintendent of the Illinois Security Hospital, Appellee.

*Opinion filed Sept. 28, 1965.—Rehearing denied Nov. 18, 1965.*

J. EDWARD JONES, of Blue Island, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (FRED G. LEACH and WILLIAM A. BOMP, Assistant Attorneys General, of counsel,) for appellee.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

This is a direct appeal from an order of the circuit court of Randolph County which quashed a writ of *habeas corpus* and remanded the relator, Peter W. Suddeth, to the custody of respondent, the superintendent of a State hospital. Section 5 of article VI of the Illinois constitution, as amended, gives us jurisdiction to entertain the appeal.

Relator was indicted in the criminal court of Cook County for the crime of attempted rape. However, on June 27, 1963, before he could be tried, a jury empaneled on his motion found him to be insane and he was placed in custody of the Department of Mental Health and confined in a security hospital, all as provided in sections 12 and 13 of division II of the Criminal Code then in effect. (Ill. Rev. Stat. 1961, chap. 38, pars. 592, 593.) In January, 1964, he filed a petition for a writ of *habeas corpus* in the circuit court of Randolph County, the place of his confinement, wherein he alleged that he had recovered his sanity and prayed for a jury trial to determine both his sanity and his capacity to stand trial for the criminal charge pending against him. The writ issued, directed to the superintendent of the hospital where relator was confined, and in his return it was denied that relator had recovered his sanity.

On the return date relator appeared in court with counsel of his choice. At that time a petition for a change of venue on the grounds of prejudice of the presiding judge was denied, as were relator's motions for the appointment of a guardian *ad litem* and for a jury trial. Thereafter, the court heard the evidence and, at its conclusion, found that relator was still insane, quashed the writ, and recommitted

him to the security hospital. In general, the evidence adduced on behalf of relator tended along the lines that he was capable of understanding the nature of the criminal charge pending against him, and of co-operating with his counsel in the conduct of a defense. For the respondent, doctors testified that relator was suffering from schizophrenia at the time of his commitment to the security hospital, that he had not recovered from his mental illness, and that he was "not ready" to stand trial on the criminal charge.

It is first contended by the relator that he was entitled to a trial by jury under the provisions of article 104 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1963, chap. 38, art. 104.) This contention is denied by respondent, as well as relator's alternative assertions that he was entitled to a trial by jury by virtue of section 5 of article II of the Illinois constitution, and that the denial of such right in this case also deprived him of due process of law. Under the view we take of the primary contention, these constitutional questions are not reached and will not be decided. *People* v. *Dixon,* 28 Ill.2d 122, 125; *People* v. *Chiafreddo,* 381 Ill. 214, 219.

As noted before, relator was adjudicated to be insane and committed to the security hospital in accordance with sections 12 and 13 of division II of the then existing Criminal Code. And had those sections remained in effect at the time of the instant proceeding, their explicit language makes it clear that a jury trial on the issue of whether relator had so recovered as to be subject to criminal proceedings was mandatory, unless waived. (See: Ill. Rev. Stat. 1961, chap. 38, pars. 592, 593; *People* v. *Reeves,* 412 Ill. 555, 562. Cf. *People* v. *Geary,* 298 Ill. 236.) However, those sections were repealed and superseded by article 104 of the Code of Criminal Procedure, which took effect January 1, 1964, after relator had been committed, thus giving rise to the present controversy.

Article 104 is comprised of three sections, the first of

which defines an "incompetent" as a "person charged with an offense who is unable because of a physical or *mental* condition: (a) To understand the nature and purpose of the proceedings against him; or (b) To assist in his defense; * * *." (Ill. Rev. Stat. 1963, chap. 38, par. 104—1; emphasis added.) Thereafter, section 104—2, which is titled "Proceedings to Determine Competency," provides in part: "(a) If before a trial, or after a judgment has been entered but before pronouncement of sentence, or after a death sentence has been imposed but before execution of that sentence, the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall impanel a jury to determine the defendant's competency. If a jury is waived by the defendant, the court shall conduct a hearing to determine the defendant's competency. (b) If during the trial the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall conduct a hearing to determine the defendant's competency and shall at the election of the defendant impanel a jury to determine that issue. * * * (f) If the defendant is found to be incompetent he shall be committed or remain subject to the further order of the court in accordance with Section 104—3 of this Code." (Ill. Rev. Stat. 1963, chap. 38, par. 104—2.) The concluding section, bearing the title "Commitment of incompetent," then directs in pertinent part: "(c) When reasonable grounds exist to believe that an incompetent is now competent the court in the county wherein the incompetent is confined or the court in which incompetency was found shall conduct a hearing *in accordance with this Article* to determine the person's present mental or physical condition. * * * If the court, following such hearing, finds the person to be competent the proceedings pending against him shall be resumed." Ill. Rev. Stat. 1963, chap. 38, par. 104—3(c); emphasis added.

Because there is no express mention of a jury trial in

section 104—3(c), it is the contention of respondent that such omission is indicative of a legislative intent not to require a jury where the proceeding is one to determine whether a person previously adjudged to be incompetent has since become competent. We do not believe this conclusion follows, particularly when we look to the express language of the section and heed those rules of construction which require us to consider a statute in its entirety in arriving at the legislative intent, (*City of Chicago* v. *Vokes,* 28 Ill.2d 475, 482) and to consider the object to be obtained and the consequences which would result from construing it one way or another. *Carrigan* v. *Liquor Control Commission,* 19 Ill.2d 230, 233.

Section 104—2 deals exclusively with the procedure to be followed for determining competency within the purview of the article, and it is the express direction of section 104—3(c) that the hearing to determine whether or not a person has become competent shall be conducted "in accordance with this Article." It is only section 104—2 to which the quoted words could have reference, and it is the sweep of such section that, with an exception not applicable here, a person is entitled to have a jury determine the issue of his competency unless waived. (See: Committee Comments, Smith-Hurd Anno. Stat., chap. 38, par. 104—2, p. 41.) When section 104—3(c) was reached, the legislature did not repeat itself as to the procedure to be followed, but merely directed that the hearing contemplated by that section would be in accordance with the procedures already established in section 104—2. (Cf. *Richards* v. *Board of Education,* 21 Ill.2d 104, 113; *Thillens, Inc.* v. *Department of Financial Institutions,* 24 Ill.2d 110, 117.) Necessarily, in our opinion, the legislature must have intended to confer the right to a jury trial by the language it employed. The overall purpose of article 104 is to implement the constitutional guarantees of due process of law by insuring that persons mentally or physically incompetent shall not be tried

or punished for a criminal offense while such incompetency exists. And whether the hearing be an original one to determine whether a person is incompetent, or one to determine whether competency has been regained, the purpose to be served and the issue presented is precisely one and the same. This being so, the legislature could not have intended the inconsistent result that the right to a jury trial would obtain in some of such hearings, but not in others.

Our conclusion is fortified by the committee comments of those who drafted the Code of Criminal Procedure, a source to which we may properly look to ascertain the legislative intent. (*People* v. *Touhy,* 31 Ill.2d 236, 239.) Speaking of section 104—3(c), the committee has stated: "Subsection (c) follows the procedures outlined in the Mental Health Code (chap. 91½) * * *." (Smith-Hurd Anno. Stat., chap. 38, par. 104—3, p. 57.) In article X of the latter code, which deals with restoration proceedings, it is expressly provided by section 10—4: "Procedure for the hearing upon such petition for discharge shall be the same as provided for in Article 8 upon the original petition for an adjudication of mental retardation, * * * *including the right of a jury trial.*" (Ill. Rev. Stat. 1963, chap. 91½, par. 10—4; emphasis supplied.) Accordingly, and for the reasons stated, we conclude that it was the legislative intent to extend the right of a jury trial to the hearing contemplated by section 104—3(c), and that the trial court erred in denying the relator such right in this case.

The complete statutory change occurring between the time of the original adjudication of relator as an insane person and the present proceeding has likewise led to a dispute between the parties as to the issue presented in a restoration proceeding of this nature. In the prior Criminal Code it was provided: "If on such hearing before trial, or upon any hearing subsequent to commitment, the jury shall determine that a defendant is not insane or feebleminded, or has permanently recovered from such insanity or feeble-

mindedness, then such person shall be subject to trial for the offense with which he is charged by indictment." (Ill. Rev. Stat. 1961, chap. 38, par. 592.) The new Code of Criminal Procedure, on the other hand, makes no mention of "permanent recovery," but provides that an accused is mentally competent to stand trial if he is capable of understanding the nature and purpose of the proceedings against him, and able to assist in his defense. (Ill. Rev. Stat. 1963, chap. 38, par. 104—1.) Respondent, relying upon the old statute, insists that permanent recovery must be shown before one can be adjudged mentally competent to stand trial, whereas relator contends the criteria of the new enactment are to apply.

It would be answer enough to respondent's contention to point out that the statutory provision upon which he relies was expressly repealed by the legislature when the Code of Criminal Procedure became effective on January 1, 1964, (Ill. Rev. Stat. 1963, chap. 38, par. 126—1,) and that such express repeal and the adoption of the new statute had two results. First, the obliteration of the prior statute as completely as if it had never been passed, (*Holcomb* v. *Boynton,* 151 Ill. 294, 297) ; and second, a legislative declaration, in effect, that whatever is embraced in the new statute shall prevail, and whatever is excluded therefrom shall be discarded. *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301, 311.

Since the cause must be tried again, presenting the possibility of their repetition, we deem it necessary to consider relator's further contentions: (1) that the trial court erred in refusing to appoint a guardian *ad litem;* and (2) that it was error to admit evidence of his mental condition at the time he was adjudicated insane. As to the first, this court has, since *People* v. *Scott,* 326 Ill. 327, 342—343, been committed to the principle that it is necessary to appoint a guardian *ad litem* for a mental incompetent in a case such as this in order to insure that his personal rights are pro-

tected, and a guardian *ad litem* should have been appointed here. As to the second, relator relies upon the rule that the mental condition of an accused at the time of the crime is foreign to an inquiry the purpose of which is to determine the capacity of the accused to be placed on trial. (*Glenn* v. *People,* 9 Ill.2d 335; 342.) This rule does not support the relator's contention that all evidence of his prior mental condition was inadmissible. We have held that proof of a prior adjudication of insanity raises a presumption that the condition continues. (*People* v. *Samman,* 408 Ill. 549, 554; *People ex rel. Wiseman* v. *Nierstheimer,* 401 Ill. 260, 275.) We are therefore of the opinion that evidence of the relator's prior mental condition was admissible in this proceeding to create a rebuttable presumption that the condition existed at the time of the hearing.

For the reasons stated, the order of the circuit court of Randolph County is reversed, and the cause is remanded with directions to grant relator a jury trial consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*