(No. 40328.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ALEXANDER LITTLE, Appellant.

*Opinion filed January 28, 1970.*

WARD, J., took no part.

Robert A. Yolles, of Chicago, appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Crebs delivered the opinion of the court:

A jury in the circuit court of Cook County found Alexander Little guilty of murder and robbery, and he was sentenced to the penitentiary for a term of 20 to 40 years. Appeal is directed to this court pursuant to Supreme Court Rule 603.

There is no dispute as to the facts surrounding the commission of the offenses. Defendant first argues that he was not given a speedy trial as required by section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 103—5), the sixth amendment of the Federal constitution and section 9 of article II of our constitution.

The robbery and murder were committed about 12:45 A.M. on July 11, 1962. Defendant was apprehended and taken into custody within a short time thereafter, and near the scene of the crime. On July 26, 1962, he was indicted. On August 1, 1962, he was arraigned and pleaded "not guilty" to both offenses. The public defender was appointed to represent him and he moved for a psychiatric examination. The next day the director of the Behavior Clinic of the court filed a report of his examination of Little. His opinion was that defendant was not co-operating with jail routine or with his attorney. The doctor was not sure whether the unco-operativeness was malingering or a psychological re-

action to his impending trial. At any rate the report recommended that he be committed to the Illinois Security Hospital where he could be observed and returned to stand trial if he was merely malingering.

On August 3, 1962, defendant petitioned the court for a sanity hearing, the petition was allowed and a jury was impanelled. The jury found defendant to be "insane" and the court committed him to the Illinois Security Hospital at Chester.

On February 5, 1964, defendant filed a petition for writ of *habeas corpus* in the circuit court of Randolph County requesting a hearing to determine his sanity. A hearing was held on the petition and defendant testified that he could now co-operate with counsel in the trial of the murder and robbery indictments. Doctor E. R. May testified that he found defendant to be very unco-operative and abusive and that he was not ready for discharge from the security hospital. The court denied the petition and recommitted defendant to the hospital. There was no appeal from this order.

On August 25, 1965, defendant filed a petition in the circuit court of Cook County requesting a competency hearing. The petition was granted and a jury impanelled. The director of the Behavior Clinic testified that he had recently examined Little and now found him competent to stand trial. The jury then returned a verdict finding him competent, the indictments were reinstated, defendant was arraigned and he entered not guilty pleas. Thereafter, defendant filed a motion for discharge under section 103—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 103—5), and the motion was denied.

Defendant does not question the fact that the order of August 3, 1962, finding him incompetent to stand trial tolled the 4-month speedy-trial provision of section 18 of division XIII of the Criminal Code (Ill. Rev. Stat. 1961, ch. 38, par. 748), which was in effect at that time. What he does argue is that the order of the circuit court of Randolph County

entered on April 9, 1964, finding him still incompetent to stand trial and recommitting him to the security hospital was not effective to toll the 120-day provision of section 103—5 of the Code of Criminal Procedure, which was in effect at the time of that hearing.

Section 103—5(a) then provided that "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned * * * by a competency hearing * * *." (Ill. Rev. Stat. 1965, ch. 38, par. 103—5(a).) Defendant argues that in order for the delay occasioned "by a competency hearing" to be effective to toll the 120-day requirement of the statute, the competency hearing must be conducted in accordance with article 104 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1965, ch. 38, pars. 104—1 through 104—3.) He then alleges that the hearing held by the circuit court of Randolph County was not conducted as required by article 104 because counsel was not appointed to represent him in that hearing, because a jury was not impanelled to determine his competency, because reasonable notice of the hearing was not given, because a guardian *ad litem* was not appointed and because there was no competent evidence to show defendant was still incompetent.

In short, what defendant is arguing is that when he filed his petition in the circuit court of Randolph County on February 5, 1964, requesting a sanity hearing, the 120-day limitation began to run and it could only be tolled by a competency hearing free from error. We cannot agree.

We start with the basic principle that an insane person cannot lawfully be tried for a crime and that to place such a person on trial is a denial of due process. (*People* v. *McLain,* 37 Ill.2d 173; *People* v. *Bender,* 20 Ill.2d 45; *People* v. *Burson,* 11 Ill.2d 360.) The 120-day limitation of section 103—5 did not begin to run on February 5, 1964, the day defendant filed his petition in the circuit court of

Randolph County, but it began to run on August 25, 1965, the day the jury in the circuit court of Cook County found him competent to stand trial.

The order of the circuit court of Randolph County finding defendant still insane and recommitting him to the security hospital was an appealable order. (*People ex rel. Suddeth* v. *Rednour,* 33 Ill.2d 278.) Rather than appealing that order, however, defendant instituted another proceeding in the circuit court of Cook County and had his competence to stand trial determined in that proceeding. Under these circumstances it would serve no useful purpose to review the proceedings held in Randolph County. If the Randolph County proceedings were erroneous, we could not make a finding that defendant was competent to stand trial in April of 1964, but could only reverse and remand for another sanity hearing (*cf. People ex rel. Suddeth* v. *Rednour,* 33 Ill.2d 278) ; and if we reversed and remanded, defendant's competency could only be determined as of the time of impanelling the new jury and not as of April 1964. *People* v. *Thomas,* 43 Ill.2d 328.

Defendant also argues that his court-appointed counsel represented him in an incompetent manner at the trial. He asserts that his only defense was his insanity at the time he committed the offenses and that there was competent medical evidence to prove this defense but his attorney was unable to ask unobjectionable questions of the defense medical witness.

The record shows that Doctor Melvin Seglin examined defendant for about 1½ hours on December 1, 1965, and reviewed his hospital records. He was asked for his opinion concerning defendant's sanity on July 10, 1962, and he answered: "My opinion is that it is quite possible, from a psychiatric point of view, that he was not competent to make the judgments necessary to conduct himself in accordance with the law on that date." Objection to this answer was sustained and it was stricken. Although the court sustained

objection to defense counsel's further questions concerning defendant's sanity on July 10, 1962, on the ground that counsel was not phrasing his hypothetical questions correctly, it is apparent from the remarks made by the court that he did not feel the doctor was qualified to testify on defendant's sanity on July 10, 1962, based on his examination on December 1, 1965. The court's feeling was verified on cross-examination when the prosecutor asked: "Of course, doctor, you have no idea of this man's mental condition as of July 10, 1962?" and he answered: "That is true." We have read all the testimony touching on defendant's mental condition at the time of the offenses and are of the opinion that his counsel ably presented to the jury all the evidence that was favorable to defendant and available to him.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. Justice WARD took no part in the consideration or decision of this case.