(No. 40344.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* EDWARD J. SMITH, Appellant.

*Opinion filed May 27, 1970.*

Lawrence M. Dunlap, of Libertyville, appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and Jack Hoogasian, State's Attorney, of Waukegan, (Ronald A. Lebowitz, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

On September 28, 1965, Edward J. Smith, accused in an indictment of murder and voluntary manslaughter, withdrew an earlier plea of not guilty and pleaded guilty in the circuit court of Lake County to the lesser charge of manslaughter. A motion for probation was denied on October 14, 1965, and he was sentenced to the Illinois State Penitentiary for a term of not less than 12 years nor more than 20 years. The defendant later filed a petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1969, ch. 38, par. 122—1 et seq.), alleging that his constitutional rights were violated in that a confession obtained from him was taken in violation of rights announced in *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and, also, that the public defender who represented him in the trial court was incompetent. After an evidentiary hearing on June 28, 1968, at which the defendant was represented by a private attorney appointed by the court, the circuit court denied his petition. The defendant's claim on this appeal, taken under Supreme Court Rule 651, is that the court's finding that his constitutional rights had not been violated is against the manifest weight of the evidence.

The defendant was arrested in Chicago, by Chicago police officers, at 3:30 A.M. on July 29, 1965, in the automobile of Cleophans Steele, who had been slain in Waukegan on July 3, 1965. The defendant, a serviceman, was absent without leave. Waukegan police were notified of the

arrest and two Waukegan officers proceeded to Chicago. The defendant was questioned concerning the slaying and regarding a rape, which, it appears, had been committed in Chicago. He made an oral statement admitting the slaying, which statement was made in the presence of Chicago and Waukegan officers. Later that day the defendant gave a confession to an assistant State's Attorney in Waukegan and signed it the following day when it had been transcribed.

In support of the contention that his confession was unconstitutionally obtained, the defendant argues that although he requested counsel when he was arrested in Chicago he was told he could not consult an attorney until he provided a statement. Apparently limiting his argument to the statement he gave at Chicago, the defendant claims it was the coercive effect of this confession he had given to the law enforcement officers without benefit of counsel and without having been advised of his rights that induced him to plead guilty. He also contends that the public defender who represented him was incompetent, because he consulted with the defendant only three times before the defendant pleaded guilty to the voluntary manslaughter count of the indictment, because he did not properly investigate the defendant's case and because he failed to file a motion to suppress the confession, though the confession was constitutionally invalid. Finally, the defendant claims that his plea of guilty was induced also by the public defender's representation that "he would get probation."

The record discloses that before the trial court accepted the defendant's plea of guilty it informed him carefully of his rights which would be affected. This admonition included an inquiry by the court whether the defendant had been promised probation or other favorable treatment. The defendant replied that no one had made such a promise. After accepting the plea of guilty, the court conducted a hearing on the motion for probation. The defendant's confession to

the Waukegan police was admitted without objection and the defendant himself testified and admitted having killed the victim named in the indictment. He testified, too, that he gave his confession voluntarily and that the confession was true. This testimony, in response to his attorney's questions, was:

"Q. And when you were brought back here [Waukegan], you went to Mr. Hoogasian's [Assistant State's Attorney] office and you voluntarily gave them a statement, which was later reduced to writing and you signed it?

A. Yes, sir.

Q. Is everything that is stated in that confession true and correct—

A. Yes, sir.

Q. —to the best of your knowledge?

A. Yes, sir."

At the post-conviction hearing, the defendant testified that the Chicago officers refused to permit him to call his commanding officer or to confer with an attorney until he confessed. He testified that he was refused food and drink, was handcuffed to a radiator and was beaten in an effort to make him confess. Beatings occurred when Waukegan officers were present, he said. Waukegan police officers, while transporting him from Chicago to Waukegan, told him, he declared, that if he co-operated there would be no trouble, but if he did not, they would kill him and make it appear like suicide. Too, he related that when he gave a statement to the assistant State's Attorney in Lake County he was told it was not necessary for him to have an attorney. The assistant State's Attorney did not advise him of his rights, he said. On cross-examination he admitted that the transcript of his statement indicated that the assistant State's Attorney had advised him of his right to remain silent and that he had given the statement volun-

tarily. However, the defendant declared that this recital did not appear in the statement at the time he signed it.

Two officers who had escorted him from Chicago told the assistant State's Attorney in his presence, the defendant said, that the attorney should inform them if the defendant failed to co-operate and that they, the officers, would insure the defendant's co-operation.

The defendant testified that 80% of the answers appearing on the question-and-answer statement he gave were made by him on the instructions of the interrogating assistant State's Attorney. Too, he said that the corrections he, the defendant, had written on the face of the statement were made at the assistant State's Attorney's direction.

He testified that the public defender told him that if he pleaded guilty to voluntary manslaughter he definitely would be granted probation and that he cautioned the defendant not to say anything to the court of this representation. He further claimed that the public defender had told him that he didn't believe that *Escobedo* was applicable to his situation and that the attorney had never discussed the feasibility of going to trial rather than pleading guilty. The attorney told him not to complain to the court of any beatings he received, he said.

The assistant public defender testified at the post-conviction hearing that he had explained fully to the defendant the possible penalties for the crimes charged in the indictment and that the final decision whether to stand trial or plead guilty to the charge of manslaughter was the defendant's. He declared that he had told the defendant he was more than willing to try his case and that if trial were undertaken he would attempt to suppress the confession. He also denied he had assured the defendant he would be placed on probation if he pleaded guilty to voluntary manslaughter. The attorney testified that the defendant told him that while he had not been well treated by the Chicago

officers he was very well treated by the Waukegan police and the personnel of the Lake County State's Attorney's office and sheriff's office. He testified, too, that he had conferred with the defendant on three occasions, each conference having taken about one hour. William Kennedy, the chief of detectives of the Waukegan Police Department, testified at the hearing that he and another officer went to Chicago to return the defendant to Waukegan and that he was with him during questioning in Chicago and while the defendant made his statement in Waukegan. Chief Kennedy said he did not observe any beating or other coercion of the defendant.

In a post-conviction hearing the burden is upon the petitioner to demonstrate that there has been a substantial deprivation of his constitutional rights (*People* v. *Stone, ante,* p. 100; *People* v. *Wease,* 44 Ill.2d 453; *People* v. *Caise,* 38 Ill.2d 486). Whether the defendant's plea of guilty was involuntary because induced by an illegal confession or confessions or an assurance of probation by his attorney and whether the defendant was otherwise inadequately represented rested, under the circumstances, in large part upon the credibility of witnesses, including that of the defendant. Credibility was a question for the trial court's determination. (*People* v. *Stone, ante,* p. 100; *People* v. *Wease,* 44 Ill.2d 453; and *People* v. *Kelley,* 44 Ill.2d 315.) Unless it can be fairly said that the determination was manifestly erroneous, that determination by the hearing judge, who had the opportunity to see and hear the witnesses, will be sustained. *People* v. *Kelley,* 44 Ill.2d 315; *People* v. *Harper,* 43 Ill.2d 368; *People* v. *Caise,* 38 Ill.2d 486; and *People* v. *Alden,* 15 Ill.2d 498.

Before the trial court here was the testimony at the post-conviction hearing, the defendant's denial when questioned by the court concerning any promises of favorable treatment, his declarations to the court regarding the voluntary character of his plea and his failure to demur when

sentenced. Considering this, we cannot say that the determination of the questions by the trial court was contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*