THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LIONEL WALTON, a/k/a ANDREW GARRETT, Defendant-Appellant.

(No. 58135;

First District (5th Division)—November 9, 1973.

Patrick J. Hughes, Jr., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Patrick J. McNally, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

## OFFENSE CHARGED

Murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 9—1).*

## JUDGMENT

After a bench trial defendant was found guilty of murder and sentenced to imprisonment for not less than 20 nor more than 30 years.

## CONTENTIONS RAISED ON APPEAL

(1) The trial court erred in not vacating the judgment of conviction and sentence where newly discovered evidence raised a bona fide doubt as to the competency of the defendant.

(2) The representation provided the defendant by appointed counsel was so ineffective as to violate his right to due process of law.

(3) The defendant's right to counsel at a critical stage of the prosecution was violated when, after indictment and without the presence or knowledge of his counsel, the prosecution made a photographic presentation to witnesses.

This appeal is taken from two orders of the trial court finding defendant guilty of murder and denying defendant's petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, sec. 72).

## EVIDENCE

---

* Section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 9—1) provides:

"(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter."

898

*Victoria Villanueva*, for the State:

At approximately 7:20 P.M. on August 2, 1969, while working in her husband's grocery store, she observed two black youths enter through the front door and walk over to where her husband stood behind the counter. Only Mrs. Betty Cardwell, a customer, was otherwise present. She observed them closely for nearly three minutes since they appeared too young to purchase liquor. She described one of the youths as being about twenty years old, wearing a black hat, dark clothes, whom she identified as the defendant, Lionel Walton. She described the other youth, later identified as Rhoiney, as being eighteen or nineteen years old, about five feet eight inches in height and wearing a yellow hat with tassels. Upon noticing that Rhoiney had a gun in his hand and that Walton had a bulge in his pocket that appeared to be the outline of a gun, she slipped through a rear door into the kitchen in order to telephone for help. When Walton followed her to the kitchen door, she exited via a rear entrance. Running around toward the front of the store, the witness heard about five shots, and then going forward, she saw her son, Jerry, chasing Rhoiney across a vacant lot. Walton was running across another lot in a different direction. She called for her son to come back and then entered the store to find Mrs. Cardwell pointing to her husband lying dead behind the counter. A description of the two men was given to the police who had arrived at the store shortly thereafter. The following day she and her son were taken down to the police station where she selected from a number of photographs, pictures of Walton and Rhoiney as the two assailants.

*Jerome Villanueva* for the State:

He is nineteen years old and the victim's son. On the evening of August 2, 1969 while umpiring a baseball game in the neighborhood, he heard some loud noises similar to fireworks or gunshots coming from his parents' store. Hurrying the short distance to the store, he noticed two men run out the front entrance way of the grocery and separate across two empty lots. The witness's description of the youths was substantially similar to his mother's. When he ascertained what had happened, the witness gave chase to the fleeing youths until called back by his mother. He was unable to make an identification of the offenders.

*Betty Cardwell*, for the State:

She was a customer in the grocery store on the night in question. She observed two men enter the store, walk up to Mr. Villanueva and whisper something to him. Her description of the men substantially corroborated Mrs. Villanueva's testimony. She noticed Mrs. Villanueva go into the kitchen and Walton follow her to the door and say, "Come back here, lady, this is a holdup." However, by the time the defendant reached the kit-

chen door, Mrs. Villanueva had already fled through a rear exit. The witness testified that the defendant then grabbed her as she attempted to escape and knocked her down with a blow to the back of her head. When she stood up, Walton fired several shots at the ceiling. She heard the other man fire at Mr. Villanueva and then heard the decedent fall behind the counter and moan several times. The witness gave a description of the two men to the police and then two days prior to the trial she was shown between eight to ten photographs in the State's Attorney's office. She picked out two photos, neither of which was the defendant Walton. In her testimony at trial, she identified Walton as one of the assailants.

OPINION

■■ It is contended that pursuant to the defendant's section 72 petition, the trial judge was required to vacate and set aside his finding and judgment of conviction or, at the very least, hold a hearing to determine the defendant's competency at the time of the trial. It should be borne in mind that the tests of a defendant's competency for such purpose are merely the ability to understand the nature of the charge against him and to cooperate with counsel in his defense. Section 104—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1967, ch. 38, par. 104—1). *People v. McKinstray,* 30 Ill.2d 611, 198 N.E.2d 829.

Walton was found guilty on October 5, 1970 and sentence was entered October 19, 1970. Less than six months later pursuant to an order entered by a trial judge in an unrelated criminal indictment, the defendant was examined by Dr. Kelleher, the Director of the Psychiatric Institute of the Circuit Court of Cook County. His report, dated March 24, 1971 states:

"As a result of this examination, it is my opinion that LIONEL WALTON, a/k/a ANDREW GARRETT suffers from mental illness diagnosed as schizophrenic psychosis with paranoid trends to the extent that he *is not now able* to participate adequately in his defense. It is, therefore, my opinion that he IS NOT COMPETENT to stand trial. (E.53.)." (Emphasis added.)

On June 8, 1971, a special progress report on Walton from the Illinois Department of Corrections Adult Reception and Diagnostic Services tendered the diagnosis of "paranoid personality with paranoid psychosis as a distinct possibility." Affidavits additionally allege that Walton is a "borderline mental defective" and currently under psychiatric observation. On August 17, 1971, after an appeal had already been effectuated to this court, the defendant's counsel sought a hearing in the circuit court based on this newly discovered evidence. The trial judge dismissed the petition.

■■■ It is clear that a defendant is entitled to a sanity hearing on the

issue of his competency to stand trial if facts are presented to the court which raise a bona fide doubt of defendant's ability to stand trial (*Pate v. Robinson*, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836), even where raised in a section 72 petition (*McDowell v. People*, 33 Ill.2d 121, 210 N.E.2d 533), and notwithstanding the fact that neither the trial judge nor the defendant's counsel had reason to suspect the defendant's incompetency or sought to initiate a hearing regarding it. (*People v. Barkan*, 45 Ill.2d 261, 259 N.E.2d 1.) The issue presented by a post-trial petition challenging a defendant's sanity at the time of conviction is whether facts were present which, had they been known to the trial court, would have raised a bona fide doubt as to the defendant's sanity for the limited purposes indicated. *People v. Anderson*, 31 Ill.2d 262, 201 N.E.2d 394.

■■ The record in this case leaves the issue somewhat in doubt. There is evidence indicating that the defendant aided his counsel in the preparation of a defense and that he testified coherently and in some detail when questioned. Further, the offer of proof does not substantiate that the defendant's mental disorder was a condition of long seeded origin rather than somewhat of a recent circumstance. There is nothing before this court except conclusions by defendant's counsel to indicate that Walton was incompetent at the time of trial. However, the determination of the existence of a bona fide doubt regarding the defendant's sanity so as to require a hearing is within the discretion of the trial judge. (*People v. Milligan*, 28 Ill.2d 203, 190 N.E.2d 753.) We are of the opinion that this court should not affirm the dismissal of such a petition without a hearing and thereby send a man to a lengthy imprisonment without at least affording his counsel the opportunity to present evidence to the trial judge in an attempt to establish the defendant's incompetency at the time of his trial, conviction and sentencing. We, therefore, remand this case to the jurisdiction of the circuit court to permit an evidentiary hearing on defendant's section 72 petition at which time such evidence, if it exists, could be presented for that court's determination.

It is also contended that the representation provided by appointed counsel was so ineffective as to violate his right to due process of law. The accepted standard for determining the inadequacy of counsel is that the representation taken on the whole is of such low caliber as to amount to no representation at all and thereby reduce the trial to a farce. *People v. Washington*, 41 Ill.2d 16, 241 N.E.2d 425.

The defendant supports his assertion by selecting various segments in the transcript wherein, it is alleged, the court appointed counsel displayed a raw ignorance of the so-called felony murder rule found in section 9—1(a) (3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1967,

ch. 38, par. 9—1(a) (3)). It is argued that defense counsel's failure to be aware of the accountability provision of that section led him to undertake an impossible, contradictory defense. One segment brought to our attention is an examination of the defendant by his own attorney incident to a jury waiver wherein, it is alleged, the defendant is implicated in the crime by his own counsel's questions.

■■ After a careful scrutiny of the record we are convinced that the defendant was adequately and competently represented. The quoted passages suggesting otherwise are incomplete or taken out of context. The segment regarding the examination of the defendant by his own counsel, while questionable, is not sufficient to vitiate the trial given the entire performance of the attorney and the perplexing behavior of the defendant. *People v. Cox,* 22 Ill.2d 534, 177 N.E.2d 211; *People v. Francis,* 356 Ill. 74, 190 N.E. 106.

Finally, defendant complains that his right to counsel was violated when, after indictment and without knowledge of his counsel, the prosecution made a photographic presentation to the witnesses thereby forming the basis for the defendant's identification as a participant in the crime. The foundation for this contention is faulty in that the photographic identification by Mrs. Villanueva, the only witness to select Walton's picture, occurred prior to his arrest. Regardless, the right-to-counsel doctrine has not required the presence of counsel during photographic presentations where the defendant himself was not present (*People v. Holiday,* 47 Ill.2d 300, 265 N.E.2d 634). Furthermore, the record indicates that the witnesses' in-court identification of Walton was based on their observations of the defendant during the commission of the felony. Identification of such independent prior origin is therefore admissible in any event. (*People v. Williams,* 7 Ill.App.3d 261, 287 N.E.2d 186; *People v. Tuttle,* 3 Ill.App.3d 326, 278 N.E.2d 458.) For these reasons we find this argument without merit.

The judgment of the circuit court of Cook County convicting defendant of murder is affirmed and the order denying the section 72 petition is remanded to proceed in accordance with the views herein expressed.

Affirmed and remanded with directions.

ENGLISH and SULLIVAN, JJ., concur.