THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Respondent-Appellant, *v.* JOHN ANDSON, Defendant-Petitioner-Appellee.

First District (1st Division)    No. 78-1850

Opinion filed July 9, 1979.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Ira H. Raphaelson, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

On March 12, 1973, after a bench trial, John Andson (petitioner) was found guilty of rape (Ill. Rev. Stat. 1971, ch. 38, par. 11—1) and sentenced to 5 to 15 years. On July 22, 1974, petitioner filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1973, ch. 38, par. 122—1 *et seq.*). Subsequently, he filed a supplemental petition wherein he alleged, *inter alia*, that there existed a bona fide doubt as to petitioner's fitness to stand trial in March of 1973. After a hearing, petitioner was granted a new trial. The State appeals.

We will first digress to consider petitioner's contention that the State has no right to appeal. Petitioner concedes that under Supreme Court Rule 27—1, in effect from January 1, 1964 to January 1, 1967, the State had the right to appeal from a final judgment in a post-conviction case. This is shown in *People v. Joyce* (1953), 1 Ill. 2d 225, 115 N.E.2d 262, citing older authorities and also in *People v. Hryciuk* (1954), 5 Ill. 2d 176, 177-78, 125 N.E.2d 61. In *Joyce*, the supreme court held that since a post-conviction proceeding "is civil in its nature, either the State or the defendant is entitled to a review of the judgment." (*Joyce*, 1 Ill. 2d 225, 227.) The civil nature of post-conviction proceedings appears from many cases. See *People v. Harper* (1969), 43 Ill. 2d 368, 372, 253 N.E.2d 451; *People v. Clements* (1967), 38 Ill. 2d 213, 215, 230 N.E.2d 185; *People v. Morris* (1977), 47 Ill. App. 3d 732, 736, 365 N.E.2d 424.

When Supreme Court Rule 651 was adopted to replace the former rule, paragraph (a) was added thereto. This paragraph presently reads (58 Ill. 2d R. 651(a)):

"An appeal from a final judgment of the circuit court in any post-conviction proceeding lies to the Appellate Court in the district in which the circuit court is located."

This rule also included paragraph (d) which provided that procedure for appeals in post-conviction cases "shall be in accordance with the rules governing criminal appeals, as near as may be." Petitioner depends on this paragraph (d) of the rule in support of his argument. Rule 651(d) is on its face procedural only. Rule 651(a) is substantive. As we would expect, the later cases proceed on the theory that the People have the right to appeal to the appellate court from final judgments in post-conviction cases. See *People v. Thomas* (1972), 51 Ill. 2d 39, 41, 280 N.E.2d 433.

Turning now to the merits of this appeal, the evidence included certain of petitioner's medical records. The evidence showed that in Arizona in 1969 petitioner was found unfit to stand trial. On September 2, 1969, he was committed to Arizona State Hospital. He was diagnosed as a passive-aggressive personality. On April 18, 1970, petitioner left the hospital on unauthorized absence.

On June 7, 1970, petitioner was admitted to St. Elizabeth's Hospital in Washington, D. C., by order of the United States Court for the Western District of Virginia for a mental examination and report. The staff of that hospital diagnosed petitioner to be mentally incompetent for trial based on severe brain damage and inability to reason. They also found that at the time of the charged offense, April 26, 1970, petitioner knew of the criminality of the act but was unable to conform his behavior to legal requirements. He was diagnosed as suffering from mental illness, more specifically, alcoholic deterioration (psychosis with organic brain syndrome), psychosis with brain trauma, nonpsychotic organic brain syndrome with epilepsy, and mild mental retardation with psychosocial deprivation. On the basis of this diagnosis petitioner was discharged from St. Elizabeth's on November 4, 1970, and committed to Southwestern State Hospital in Virginia by judicial order of the Municipal Court of Virginia.

At Southwestern the staff diagnosed petitioner to be suffering from schizophrenia, schizophrenia chronic undifferentiated type and/or psychosis with epilepsy and psychosis associated with other cerebral condition. Petitioner escaped from Southwestern on January 10, 1971, and was classified as discharged on February 8, 1971.

Petitioner was readmitted to St. Elizabeth's Hospital on June 2, 1971, by order of the United States District Court for the District of Maryland

for a determination as to his competency and sanity in connection with an alleged offense on or about August 4, 1970. Dr. Robert Robertson found petitioner to have a factual and rational understanding of the proceedings pending against him. The doctor concluded that petitioner could rationally assist counsel in his own defense. However, the doctor also found that petitioner suffered from mental diseases (the same diagnosis as in his first admission) which substantially impaired his behavior controls so that although petitioner knew the criminality of his act, he was not able to conform his behavior to the requirements of the law. The doctor also added that petitioner's release to the community would endanger the safety of other persons, himself, property and the public interest in general. On the basis of this diagnosis, the indictment pending against petitioner was dismissed.

After petitioner's 1973 conviction for rape in Cook County, he was sent to the Illinois Department of Corrections. He was diagnosed as suffering from schizophrenic reaction, chronic undifferentiated type, and chronic brain syndrome with a convulsive disorder. In October of 1973, he was transferred to Menard Psychiatric Center.

In June 1977, at the request of an assistant public defender, Dr. John B. Goldsborough examined petitioner and his medical records. In a letter addressed to the public defender, Dr. Goldsborough stated that "it is difficult for any examiner, expert or otherwise, to reach totally dependable conclusions about incidents which occurred several years before the reevaluative examinations are made. However, some considerations appear obvious." Keeping that in mind, Dr. Goldsborough concluded that it must be assumed that at the time of the charge and trial for rape, petitioner was "mentally ill and/or defective and has been for many years probably back into his childhood". In response to the question whether petitioner was legally sane at the time of the alleged offense, Dr. Goldsborough stated that "[s]ince the disease processes, so diagnosed, are medically chronic, irreversible, and continuous, it can be assumed that the specifications for insanity were present." The doctor further stated that he doubted that petitioner fully understood anything about the trial for rape.

In Dr. Goldsborough's evidentiary deposition, he stated that petitioner is suffering from schizophrenia, undifferentiated and paranoid, and chronic brain syndrome, namely epilepsy or a convulsive disorder. He further stated there is a reasonable doubt that petitioner understood what was going on in the trial and that petitioner's mental illness is continuous and was present before, during, and after the trial. He doubted that petitioner "knew or possibly even cared about the proceedings."

The State presented the testimony of Robert Schulz, petitioner's court-appointed attorney during the rape trial. Schulz testified that he had

been an assistant public defender from 1968 to 1972. He had tried 12 to 15 jury cases and 75 to 80 bench cases and interviewed hundreds of defendants in the process. During his career as a public defender, Schulz estimated that he filed 100 motions for Behavior Clinic Examinations (BCX), based on his observations or information received from defendants, witnesses or investigation.

In preparing the case for petitioner's trial, Schulz spoke with petitioner 10 or 12 times. He testified that he was able to discuss the defense with petitioner. At trial Schulz presented a defense of consent based on what petitioner told him and his own investigation. Schulz further testified that he never had trouble communicating with petitioner or understanding him. Schulz did not file a BCX in this case because he did not feel that there was any indication that one was needed. He stated he was unaware of petitioner's prior commitments to mental hospitals.

The report of proceedings from the rape trial was admitted into evidence. It indicates that petitioner testified and was able to relate a clear and detailed account of his activities on the night of the alleged rape. He stated facts, which if believed, would have justified a finding that the alleged victim had consented.

The trial court found petitioner guilty and the matter was continued for a presentence investigation. Petitioner later called Schulz and asked him what the chances were for winning a motion for new trial. Schulz told him "a million to one." Petitioner then said, "I'll see you" and hung up. Petitioner did not appear at the sentencing hearing about one month later.

After reviewing all the evidence, the judge in this post-conviction hearing, who had also presided at petitioner's rape trial, noted that petitioner was required to raise a bona fide doubt of his competency at the time of his trial by a preponderance of the evidence. The judge also noted that petitioner's prior judicial commitments raised a rebuttable presumption of incompetence. He then concluded that the presumption of incompetence "taken with all the evidence" presented in this case raised a bona fide doubt as to petitioner's competency at the time of his trial. Accordingly, the court allowed the petition and ordered a new trial.

The State contends: (1) the post-conviction court erred in ordering a new trial where the trial court's decision was based on the mistaken belief that a prior commitment to a mental institution creates an irrebuttable presumption of unfitness to stand trial and (2) the finding of a bona fide doubt of petitioner's fitness to stand trial in 1973 is contrary to the manifest weight of the evidence.

■■ "It is established that the conviction of a person who is unfit to stand trial violates due process." (*People v. Murphy* (1978), 72 Ill. 2d 421, 430, 381 N.E.2d 677, and cases cited therein.) Fitness for trial comprises two

requirements: the ability to understand the nature and purpose of the proceedings and the ability to assist in one's defense. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(a); *Murphy*, 72 Ill. 2d 421, 431.) " 'Fitness speaks only to a person's ability to function within the context of trial.' [Citation.] It does not refer to sanity or competence in other areas. A defendant can be fit for trial although his mind may be otherwise unsound. [Citations.]" *Murphy*, 72 Ill. 2d 421, 432-33.

■■ The Illinois Supreme Court has held that post-conviction relief is available where it is shown that at the time of the trial there were facts in existence which, had they been known to the trial court, would have raised a bona fide doubt as to the fitness of the accused for trial. (See *People v. McLain* (1967), 37 Ill. 2d 173, 226 N.E.2d 21; *McDowell v. People* (1965), 33 Ill. 2d 121, 210 N.E.2d 533; *People v. Anderson* (1964), 31 Ill. 2d 262, 201 N.E.2d 394.) Thus, the critical inquiry by the court during the hearing on the petition for post-conviction relief, is whether the facts, if known to the trial court, would have raised a bona fide doubt as to petitioner's competency to stand trial. The finding by the post-conviction court will not be set aside upon review unless it is contrary to the manifest weight of the evidence. See *People v. Smith* (1970), 45 Ill. 2d 399, 405, 259 N.E.2d 247.

■■ In response to the State's first contention, petitioner maintains that the post-conviction court did not state that a prior judicial commitment created an irrebuttable presumption of unfitness to stand trial. We agree. The post-conviction court stated that petitioner is presumed incompetent, when so adjudicated, until he is judicially restored. It further stated that this is a rebuttable presumption. The able trial judge thus made a correct statement of the law in Illinois. (See *People ex rel. Suddeth v. Rednour* (1965), 33 Ill. 2d 278, 285, 211 N.E.2d 281 and cases cited therein.) Under *People v. Barkan* (1970), 45 Ill. 2d 261, 264, 259 N.E.2d 1, a presumption of incompetency arises upon an adjudication of mental illness and remains until restoration. This presumption is dependent upon two conditions: "the illness must be shown to be of a permanent and continuing type, and the adjudication of illness must not have been too remote." *Barkan*, 45 Ill. 2d 261, 264.

■■ In our opinion, both of these conditions have been met in the case before us. The medical history of petitioner indicates a continuous course of mental illness beginning prior to 1969. Dr. Goldsborough stated that the illnesses from which petitioner suffered were "medically chronic, irreversible, and continuous" and that he had probably suffered from them since childhood. The adjudication of incompetence occurred in 1969 and of mental illness in 1970. We do not find these adjudications to be too remote in view of petitioner's medical history.

Once this presumption of incompetence is raised, it may still be

rebutted by evidence that petitioner understood the nature and purpose of the proceedings and that he was able to assist counsel in his defense. It must be remembered though that in this post-conviction proceeding, the petitioner need only raise a bona fide doubt of his competence to stand trial by a preponderance of the evidence.

The post-conviction court held that all the evidence presented raised a bona fide doubt as to petitioner's competency by a preponderance of the evidence. We cannot say that this finding is contrary to the manifest weight of the evidence. Petitioner has a long history of mental illness and has never been judicially restored to competency. The State's evidence (the testimony of attorney Schulz and the report of proceedings of the criminal trial) tends to show that petitioner understood the nature and purpose of the proceedings and could assist his counsel in his defense. However, the trial court's determination of this issue must be given great weight on review. *People v. Davis* (1978), 65 Ill. App. 3d 580, 589, 382 N.E.2d 594.

■■ The State cites *Davis* in support of its contention that "the mere fact that a defendant suffers some mental disturbance or requires psychiatric treatment does not necessarily raise a bona fide doubt as to his ability to understand the nature and purpose of the proceedings against him or to assist in his defense". (*Davis*, 65 Ill. App. 3d 580, 589.) We agree with this statement. However, we find the facts in *Davis* to be substantially dissimilar from the situation before us. The petitioner in *Davis* had never been adjudicated incompetent to stand trial. Also, the trial court during the criminal proceedings had before it some evidence of petitioner's prior medical history and addressed itself to the question of competency. In the instant case, during the entire criminal proceedings, the trial judge was unaware of any medical history of the petitioner herein and had no occasion to address the question of competency. This case is therefore similar to the cases distinguished in *Davis*. (*People v. McLain*, 37 Ill. 2d 173; *McDowell v. People*, 33 Ill. 2d 121; *People v. Walton* (1973), 15 Ill. App. 3d 896, 305 N.E.2d 395.) For these reasons the order of the post-conviction hearing court granting a new trial is affirmed.

Order affirmed.

McGLOON and O'CONNOR, JJ., concur.